Chief Justice Robertson
delivered the Opinion of the Court.
In 1819, Beal, having, by an unwritten contract., bought from Hawkins five acres of unimproved land adjoining the town of Burlington, in Boone county, for the price °f ^ve hundred dollars, payable at the end of eight years, with legal interest for three years of that term— entered upon it, prepared it for residence, by building a l0g dwelling, and for carrying on the tanning business, by making vats, bark house, &c. and occupied and used it, under the contract, until 1828, when, not agree- . . TT , . , mg with Hawkins as to the consummation oí the agree *5 ment, be agreed to rent it until the 10th of March, 1829, with permission to remove the bark mill and all other movable improvements. In 1830, he was ejected by Hawkins, who then proposed to make him a title on the payment of five hundred dollars without interest, or to let him remove his improvements if he would pay for the timber which had been consumed during his occupancy. But declining both propositions—the first, either because he was unable to pay for the land, or was unwilling to pay as much as five hundred dollars, and the last because, as he alleged, the improvements were much decayed, and would be of but little value to him—he filed a bill in chancery, for compensation for the improvements, alleging that the consideration was, by the contract, to have been paid in current bank notes, which he had been willing to pay, but that Hawkins, taking advantage of the statute of frauds, had refused to execute the agreement; not suggesting, however, that he had ever offered to pay the five hundred dollars in bank notes.
ties, in their pleadiugs, concur us to tnesaie, nominal pnce, terms, occupauey <yc. but tbe purchaser alleges that the price was to be paid in current bank notes, which the vendor denies, alleging that all dispute Wus com piouiiseti, winch tnepui chaser denies: the pioof upon the disputed points lncoriclu»ive. Held, that, under the circumstauces of this case, the purchaser may be allowed pay lor his impiovemeats, estimated, at the time of the eviction, at the difference between the value of the place without them, with them, in their then condition; and the \euuor entitled (as a set-oü) to the luir value of the use of the laud. Had it appeared cieurly, that the non-execution ol the contract was uttribuUble to the delinquency or fault ol the purchaser, he would have been allowed no pay for the improvements.
Hawkins, in his answer in the nature of a cross bill, denied that he ever agreed to take any thing but five hundred dollars in money; averred that he had always been willing to make a conveyance of the legal title on receiving the consideration; charged that Beal had never been able or willing to pay for the land; reitei'ated the same proposition to the court; insisted that the improvements were of but little, if any, value to him, and alleged that, when Beal rented the property, as before stated, the whole controversy was compromised, and Beal abandoned his claim to compensation for improvements.
In answer to the cross bill, Beal denied the alleged compromise, and insisted that he had never agreed to surrender his claim for improvements.
The depositions sustain Hawkins’ allegations, excepting as to the medium in which the consideration was to be paid and as to the compromise; and respecting these, although nothing certain is proved, we are authorized to infer, that the five hundred dollars were to have been paid in “current bank notes” and that Beal never agreed *6 to abandon his claim for his improvements. The value of the improvements has not been clearly established. Two witnesses expressed the opinion that, when new, they were worth four hundred and fifty dollars, and one of them suggested, that he supposed they were not worth so much by fifty dollars when Beal was evicted. But it is evident, from the facts abundantly proved, that the improvements had, by use and decay, become greatly deteriorated. Nevertheless, the Circuit Court decreed to Beal four hundred dollars for the improvements, subject to a credit of betwixt forty and fifty dollars for rent, from the lOi/i of March, 1829, when the lease before mentioned expired.
This appeal seeks the reversal of that decree.
In the conduct of Hawkins nothing has been perceived which, in the slightest degree, can be deemed inconsistent with the contract, the principles of equity, or the most scrupulous good faith, unless he erred in insisting on payment in specie, or unless five hundred dollars without interest, which he proposed to accept in 1830, exceeded the value to which he was justly entitled; and as to these matters there is nothing like approximation to certainty in the deductions to be made from the facts. Nov does it satisfactorily appear, that Beal was willing or prepared to execute the agreement, even according to his own construction of its terms. Had it clearly appeared that the non-execution of the contract was attributable altogether to his wilful delinquency or fault, we should be indisposed to concede to him any right in equity to any compensation whatever. But, as we are not perfectly satisfied of this, and as Hawkins may be benefitted by ameliorations, made probably in good faith, we are disposed to allow to Beal the value of them on equitable principles—and that is the difference between the value of the land in the condition in which Hawkins received it from Beal, and of that in which it was when Beal received it first from Hawkins, to be estimated at the time of Beal’s eviction, and to be diminished, of course, by the value of the use of the land by Beal, as it was when he first took possession of it. This is the full measure of Beal’s equity in its most favorable *7 aspect. But it is evident that the principle here laid down did not govern the Circuit Court. Hawkins is liable only for amelioration—that is for all accession of value in consequence of improvements, as he received them—and he is certainly entitled to an abatement to the extent of the value of the use of his land, as long as Beal occupied it, excepting the short interval during which he paid stipulated rent.
Wherefore the decree must be reversed, and the cause remanded with instructions to ascertain the value of amelioration and of use, and then to render a decree according to the principles herein prescribed.