Summers and wife et al vs. Howard.

---

---

## SUMMERS AND WIFE ET AL V. HOWARD.

In June, 1867, a c rator of the estate of infants, by order of the Probate Court, sold certain town lots belonging to them, and received and paid over to them the purchase money. The purchaser took possession and made valuable improvements upon the lots with knowledge of the infants who as erted no claim to them until the bringing of the suit. Held

1st. That the Probate Court coul not authorize a curator to sell a minor's estate, and the sale was void.

2d. That it would be unjust for the plaintiffs to recover the lots and the rents and profits without returning to the purchaser the money received from him and making compensation for the improvements made and taxes paid by him; but for such improvements as were made during their disability they can not be required to make compensation beyond the value of the rents and profits of the premises.

3d. That the rents and profits should be estimated at the rental value of the lots without the improvements n ade by the purchaser.

4th. That the improvements should be estimated at their value at the time of the recovery.

5th. That the plaintiffs should be charged with only such of the taxes paid by the purchaser as would be chargeable upon the lots without the improvements.

APPEAL from *Phillips* Circuit Court, in Chancery.

Hon. J. N. CYPERT, Circuit Judge.

*Tappan & Horner*, for appellant.

*J. C. Palmer*, contra.

HARRISON, J. :

James Summers and Joanna Summers, his wife, and Austin N. Yerby and James H. Yerby, on the 26th day of February, 1862, brought their action of ejectment against William J. Howard, for three lots in the city of Helena, on which were a dwelling house and other improvements

The defendant made his answer a counter-claim, and on his motion the cause was transferred to the equity side of the court.

Admitting that the lots had been the property of the plaintiffs, Joanna Summers, Austin N. Yerby and James H. Yerby, who inherited them from their father, Henry Yerby, the defendant, alleged that they were, on the 8th day of June, 1867, under an order of the court of probate, made at the January term, 1867, offered at public sale, by Lycurgus Cage, who was the curator of the real estate of said Joanna and James H. Yerby, then minors, and were bid off and purchased by him the defendant, at the price of $1,400, and which was their fair and full value. That according to the terms of the sale, one half was required to be paid in cash, and the remainder in twelve months, but that Cage being willing to discount the deferred payment, $77.50, he paid him in cash and in full of the purchase money, $1,333.50, and Cage, the same day, conveyed the lots to him by deed.

That Cage made to the court of probate a report of the sale, and the sale was confirmed by the court, but that, through the negligence and misprission of the clerk, the order confirming the sale was not entered upon the record. That Cage paid over the money he paid him for the lots, after paying the expenses of the sale and certain charges against them to the plaintiffs, Joanna, James H. and Austin N. Yerby, in accordance with the direction and order of the court. And that, immediately after his purchase, he entered into possession of the

lots, and was then and had ever since been in possession of them.

He further averred, that since he had been in possession of the lots, he had made valuable and lasting improvements on them, and with the knowledge, at the time, of the plaintiffs, who stood by and asserted no claim or title to the property; and that the said Austin N. Yerby was of age when the order for the sale was made and joined with Cage in the petition for the same, and the said James H. Yerby became of age, and the said Joanna Yerby intermarried with the said James Summers, soon after the sale of the lots to the defendant. And he prayed that the sale be confirmed, and his title quieted, and for general relief.

The plaintiffs filed a reply: They admitted, as alleged in the answer, the sale of the lots by Cage under the order of the court of probate; the purchase of them by the defendant, and the conveyance of the same to him by Cage. They admitted the payment of the price, the said sum of $1,333.50, to Cage, and the payment of the same over to the said Joanna, James H. and Austin N. Yerby, less the said expenses of sale and charges—that Austin N. Yerby was of age when the order for the sale was obtained; that James H. Yerby became of age on the 21st of August, 1868, and Joanna intermarried with James Summers in February, 1868; that the defendant went into possession immediately after his purchase, and that he had made valuable and lasting improvements on the lots.

But they denied that the lots were sold for their fair and full value; that Austin N. Yerby joined in the petition for the sale; that the sale had been confirmed, or that Cage ever made a report to the court, and denied that they had, at the time, knowledge of the improvements the defendant was making.

Upon the hearing the court held the sale void, and decreed possession of the lots to the plaintiffs. It directed an account

between the parties to be taken by a master, as to the rents and profits ; the money that came into the hands of plaintiffs which (it found to be $1,100), and interest thereon, the value of the improvements, and the taxes paid by the defendant,. which was done, and a balance was found to be due from the plaintiffs to the defendant of $1,680.74.

The sum so found, the plaintiffs were decreed to pay the defendant, and the same was declared a lien on the property.

Both plaintiffs and defendant appealed.

The master's account contained three statements as to the value of the improvements. Their original cost ; their value at the time the account was taken ; and what they might then be made for.

The decree does not state the facts found or upon which it is made, but it would seem from the sum decreed the defend- ant as the balance due him upon the account, that the value at the time of auditing the account was taken by the court as the measure of compensation for the improvements.

With some corrections made by the court, the account, so far as we are able to understand it, stood thus :

Value of improvements............................$2,137.58
Money paid in the purchase $1,100, and interest to
     June 8th, 1877, date of decree............. 1,760.00
Taxes...................................... 859.89

    Total.......................................$4,757.47
Rents and profits.................................. 2,940.00

Balance in favor of defendant....................$1,817.47

The discrepancy between the balance above shown and the sum decreed the defendant is very probably owing to an error in calculation.

It was not alleged, nor does it in any manner appear, that Austin N. Yerby, who seems to have received a full share of

the money, sold or contracted to sell his interest in the lots to the defendant.

That the sale by Cage of the interest of the other two owners was void, though it had been confirmed, of which there was no evidence, admits of no question.

The whole law in respect to curators, as it existed when the order of sale was made, and the sale took place, is contained in the following sections of chapter 81 of Gould's Digest :

"Sec. 32. If any minor own real estate, and have no guardian, the court of probate may appoint a curator to take charge of such estate, whose powers shall cease on the appointment of a guardian.

Sec. 33. The court shall have power to make such rules and regulations in relation to the curator of the estate of any minor as may be deemed just and proper.

Sec. 34. In such cases the rent of the real estate of any such minor shall be paid by the curator into the court, and the same shall be appropriated for the benefit of the minor."

The Legislature, it is thus seen, had made no provision for the sale of a minor's real estate by a curator, and his power over it extended no farther than to its preservation and management; and the court of probate could confer upon him no authority to sell it.

It would be, however, manifestly unjust for plaintiffs to recover the lots, and, as a necessary consequence, the rents and profits, without paying back to the defendant the money received from him and making compensation to him for the improvements made upon them.

They deny, it is true, that they had any knowledge of the fact, when he was putting the improvements upon the lots, but they knew of the sale ; they had the money, and they must be presumed to have known that he was in possession of them ; and by failing to repudiate the transaction and to assert

their title, when they might have done so, were guilty of gross *laches*, and should not be allowed to appropriate to themselves, without satisfaction or indemnification, the improvements of the defendants, which by their silence they permitted to be made. *Morris* v. *Terrill*, 2 Rand., 6; *Barlow* v. *Bell*, 1 A. K. Marsh. 246; *Ewing's heirs* v. *Handley's, exr's.* 4 Litt. 171: *Janes* v. *Boisguard*, 39 Miss., 796; *Douglass* v. *Bennett*, 51 Miss., 680.

A considerable part of the improvements, however, were made, as the proof shows, before the marriage of Mr. Summers, or James H. Yerby became of age; for such they cannot be required to make compensation beyond their shares of the rents and profits, for not then being *sui juris* no laches can be imputed to them.

But for those made after her marriage, Mrs. Summers, or more properly her husband, who has become entitled to her interest in the rents and profits, must make compensation.

It was therefore important, but which was not done, that the value of the improvements made after the marriage of Mrs. Summers, and of those made after James H. Yerby became of age, should have been ascertained.

The defendant was charged in the master's account, and also in the decree, with rents and profits as enhanced by the improvements. This was also an error. A party who is, under the circumstances of the case, entitled to compensation for improvements, is only chargeable with such rents and profits as the property would have yielded without the improvements; for if charged with such as arise exclusively from the improvements which he has made, he would pay for the use of that which was his own. *Neale* v. *Hagthrof*, 3 Bland's, Ch,, 591; *Hawkins* v. *Beal*, 4 Dana, 4; *Taylor* v. *Bate*, Ib. 198; *Richardson* v. *McKinson*, Litt. Sel. Ca., 321; *Williamson* v. *Williamson*, 3 S. and M., 749.

The rents and profits should therefore have been estimated according to the state or condition of the lots before the improvements were put upon them.

And by a parity of reasoning the plaintiffs should not have been charged, as seems to have been the case, with the whole amount of taxes paid by the defendant, but with such part only as would have been paid upon the lots without the improvements.

The plaintiffs were adjudged to account to the defendant for only $1,100 of the money paid by him—the sum which Cage paid over to them, but the evidence discloses the fact that Cage paid taxes on the lots, and also redeemed them from a tax sale. These expenditures were as clearly for their benefit, as the money they directly received, and there can be no reason why they should not account to him for the money so expended.

The court committed no error, if, as we suppose, in determining the compensation for the improvements, it estimated them at the value when the account was taken.

"Such allowance," says Chancellor Bland, in *Neale* v. *Hagthrof*, cited above, are made upon the ground that the improvements do in fact pass into the hands of the plaintiff as a new acquisition ; and they can only be a new acquisition to him to the extent of their value at the time he recovers or obtains possession of them ; and therefore their value at that time is to be allowed; and nothing more." *Southall* v. *McKean*, 1 Wash., (Va.,) 336 ; *Green* v. *Biddle*, 8 Wheat, 77.

The decree is reversed and the cause remanded to the court below, with instructions that an account be taken between the parties as above indicated, and a decree rendered in conformity with this opinion.