## McDONALD v. RANKIN.

### Opinion delivered June 28, 1909.

1. BETTERMENT STATUTE—RECOVERY OF IMPROVEMENTS.—One who purchased lands at a judicial sale, based upon a decree from which an appeal was subsequently taken, resulting in the reversal and annulment of such decree, may be entitled, under the betterment act (Kirby's Digest, § § 2754-8), to recover the value of improvements placed upon the land before the appeal was taken, if he purchased in good faith and held possession without actual notice that his title was assailed by one claiming a better title. (Page 183.)

2. SAME—HOW RENTAL VALUE OF LAND ASCERTAINED.—The measure of the rents and profits which are recoverable under the betterment act is the fair net rental value of the lands in their improved condition during the period named in the act, towit, three years before commencement of suit, in determining which value the amounts expended for necessary repairs and for such necessary expenses as under the custom of the country have been paid for management and collection of the rents should be deducted from the gross rental value. (Page 186.)

3. SAME—LIABILITY OF HEIRS OF PURCHASER FOR RENTS.—Where the heirs of a purchaser of land at a void judicial sale became entitled to recover the value of improvements placed upon the land by their ancestor, they will be chargeable with the rents upon the land which were received by such ancestor, to the extent of the fund received by them for such improvements. (Page 188.)

4. IMPROVEMENTS—WHEN SET OFF AGAINST PURCHASE MONEY.—While the betterment act limits the recovery of rents from a *bona fide* purchaser to three years from the commencement of the suit to recover the land, all rents received by such purchaser, without restriction, may, in a suit against him in equity, be set off against the claim of such purchaser to reimbursement of the purchase money received by the plaintiff. (Page 188.)

5. JUDICIAL SALE—ANNULMENT—RECOVERY OF PURCHASE MONEY.—Where a judicial sale of a minor's property is set aside, the purchaser is entitled to reimbursement of so much of the purchase money as was received by such minor. (Page 188.)

6. VOID JUDICIAL SALE—RECOVERY OF INSURANCE MONEY.—Where the purchaser of the land at a judicial sale which was subsequently held void insured improvements thereon and collected the insurance money after the property was destroyed by fire, she will not be held to account therefor to the owner of the land, as the insurance contract was a personal one. (Page 189.)

7. DAMAGES—RECOVERY OF RENTS—INTEREST.—Where the plaintiff in a suit to recover land is held entitled to recover rents, he is, in addition, entitled to recover interest thereon from the time the rents were collected. (Page 189.)

8. Taxes—reimbursement—interest.—Upon a judicial sale being held void, the purchaser is entitled to recover the taxes paid by him, with interest from the time the taxes were paid. (Page 189.)

9. Void judicial sale—reimbursement for improvements.—Where a purchaser of land at a void judicial sale is entitled to reimbursement for improvements placed by him thereon, the value of the improvements are determined as of the time of the recovery. (Page 189.)

10. Same—how value of improvements determined.—In determining the value of improvements on land, the difference in the value of the land without the improvements and the value of the land with the improvements in their present condition is the amount to be allowed, such valuation not to exceed the cost of making or replacing the improvements at the time of the recovery, and in the condition in which they are at that time. (Page 190.)

11. Same—possession—payment of value of improvements.—Under the betterment statute (Kirby's Digest, § 2755) the owner of land in the possession of another claiming it in good faith under color of title is not entitled to recover possession thereof until an accounting of rents and profits and of the value of the improvements and taxes paid has been had and a final determination made. (Page 191.)

12. Appeal and error—final order.—An order, in a suit for the recovery of land, directing an accounting of rents and profits, of the value of improvements made by the occupant, and of the taxes paid, and that the plaintiff shall not recover until an accounting is had and a final determination made, is not final or appealable. (Page 191.)

13. Same—practice on reversal.—Where a decree of a lower court involving the title to land is reversed, the cause will be remanded with directions to enter a decree in accordance with this court's opinion. (Page 195.)

Appeal from Woodruff Chancery Court, Northern District; *Josephus C. Marshall,* Special Chancellor.; reversed.

### STATEMENT BY THE COURT.

This cause has been before this court several times, and the various questions involved in and decided upon former appeals will be found in the following opinions: *Rankin* v. *Schofield,* 70 Ark. 83; *Rankin* v. *Schofield,* 71 Ark. 168; *Rankin* v. *Schofield,* 81 Ark. 440; *Rankin* v. *Fletcher,* 84 Ark. 156; *Schofield* v. *Rankin,* 86 Ark. 86. The questions which are presented upon the present appeal to this court involve the determination and adjustment of the rights of the parties to the improvements and taxes, and the rents and profits of the lands in litigation.

These lands belonged to J. N. S. Gibson,, who died in 1884, seized and possessed thereof. The original suit herein was instituted in the Woodruff Chancery Court on the 17th day of August, 1886, by the collateral heirs of J. N. S. Gibson, as plaintiffs in that suit, against the administrator of his estate, Bettie Harwell, who was at one time his wife, and Sallie Spott Gibson (now Rankin), the appellee in this appeal, who was his only child, as defendants in that case, for the purpose of partitioning said lands. At the January term, 1889, of that court, a consent decree was rendered directing the sale of the property in controversy. For that purpose a commissioner was appointed, who made a sale of the property in the latter part of the year 1889. At that sale one L. B. McDonald, who was not a party, but a stranger, to the suit, became the purchaser of the property at the bid and price of $14,050. The commissioner made the report of said sale to said chancery court, and at its January term, 1890, that court duly approved and confirmed the sale and directed the commissioner to execute to the said purchaser a deed for said land. The commissioner executed said deed to said McDonald, which was duly approved by and acknowledged in said court in the manner prescribed by law.

L. B. McDonald went into possession of the lands under said deed in 1890, and made permanent improvements upon the lands. In 1896 he conveyed a portion of said lands to his daughter, Antoinette Bond, who is one of the appellants in this appeal; and in 1899 he conveyed the remaining portion of said lands to Cora and Jesse McDonald, who are his daughter-in-law and grandson, and who are the other appellants in this appeal.

In 1889 at the time that said consent decree was entered, Sallie Spott Rankin was a minor of tender years, and she came of age in June, 1899. On February 19, 1900, she prayed an appeal to this court from said consent decree, under which the sale of said lands was made to said McDonald; and on November 15, 1902, that decree was reversed by this court (*Rankin* v. *Schofield*, 71 Ark. 168). On December 20, 1902, Sallie Spott Rankin filed a supplemental complaint in said cause against the said appellants, seeking therein to recover from them the possession of said lands and the rents and profits thereof, and process on said supplemental complaint was served on said appellants on

January 8, 1903. An answer was filed by them, in which they claimed title to the lands under said commissioner's deed executed to said McDonald and the conveyances from McDonald to them. A decree was rendered by the chancery court in their favor, and that decree was reversed by this court. *Rankin* v. *Schofield*, 81 Ark. 440. It was there found that Sallie Spott Rankin was the only child and sole heir of said J. N. S. Gibson, and the owner of said lands; and it was held that the said consent decree of the Woodruff Chancery Court ordering the sale of said lands was void, because it was entered solely by the consent of the parties, and without any consideration or judicial determination, and, said Sallie Spott Rankin being then an infant, her guardian had no authority to consent to such a decree; and also because the consent decree was not authorized by the issues raised in the pleadings. In that opinion this court expressly stated that it did not "undertake to determine the rights of the parties to a return of proceeds of sale of lands received by the appellant (Sallie Spott Rankin), rents of lands and improvements thereon, or other incidents consequent on the recovery of the same."

Upon the cause being remanded to said chancery court, that court entered a decree setting aside the commissioner's conveyance, which had been executed in 1890, to said L. B. McDonald, and decreeing in favor of said Sallie Spott Rankin a recovery of said lands. It appointed a special master to take an account of the value of the improvements and amount of taxes paid on said lands by the appellants and those under whom they claimed; and also an account of the rents and profits of said lands and of the repairs made thereon. It also directed the taking of an account of the purchase money which was paid by said McDonald and received by the parties to the original proceedings. It provided that said accounts be taken and stated separately as to the lands conveyed to and claimed by said Antoinette Bond, and as to the lands conveyed to and claimed by said Cora and Jesse McDonald. That court further decreed:

"It is further ordered that no writ of assistance or other process for the possession of said lands shall issue in favor of plaintiffs in said supplemental proceedings until the value of the aforesaid improvements and taxes shall have been ascertained

and any balance, if any there be, owing to said defendants on account of said improvements, after setting the value and amount of such improvements off against any amount that may be coming to said plaintiffs on account of rents and profits, less the cost of repairs, shall have been paid.

"In taking the account of rents, the master will ascertain the amount commencing with the first year, to-wit: 1890, and ascertain what rents were received by L. B. McDonald for that year, or what he might by the exercise of ordinary diligence, that is, the diligence which a man of reasonable capacity would exercise in his own business, and will charge him with the rents thus received or which he might have received for that year.

"He will next ascertain the cost of all necessary repairs upon said lands for that year, and deduct the amount thereof from the amount of rents in like manner for each year covered by the period aforesaid. In taking the account for improvements, he will ascertain and state specifically each permanent improvement which he finds to have been made and the nature and character thereof, and value such improvements added to said premises. He will also find as separate item what amount such improvement may have added to the rental value of said premises. The master will proceed as early as practicable to take and state such account.

"Whereupon said plaintiffs renewed their motion filed herein, to-wit: On the 3d day of January, 1903, for writ of restitution, which motion is by the court overruled at this time on the ground that the court is of the opinion that the defendants herein are entitled to an accounting for the value of permanent improvements placed upon said premises and taxes, and that no writ of restitution should be issued until the master aforesaid shall make his report, and the same shall have been approved by the court."

A great deal of evidence was taken by the master relative to these matters submitted to him, and he made a detailed report of his findings relative thereto. The findings of the master as to the values and amounts of the items submitted to him are well sustained by the evidence; and his work has been done so well and thoroughly in this respect that neither party has made any objection thereto in that regard. Their objections are based solely upon the rights of the respective parties to recover the

respective items. The special chancellor approved these findings, but altered the report of the master by allowing certain items and disallowing others. Upon a final hearing, the special chancellor entered a decree in favor of Antoinette Bond in the sum of $2,095.50, the same being a net balance which he found to be due upon improvements made and taxes paid upon that portion of the lands conveyed to her; and in favor of Sallie Spott Rankin and against Cora and Jesse McDonald in the sum of $4,662.81, the same being a net balance found by him to be due on the mesne profits of that portion of the lands which were conveyed to Cora and Jesse McDonald.

In the above amounts there were not included any rents for the year 1908 on any of said lands. From this decree all the parties have appealed to this court. Sallie Spott Rankin also prayed a separate appeal from that portion of the decree refusing to give to her the immediate possession of all the lands. The two appeals have been consolidated in this court, and the cause is now docketed and will be referred to with Antoinette Bond and Cora and Jesse McDonald as appellants and Sallie Spott Rankin as appellee.

*Moore, Smith & Moore,* for appellants McDonald and Bond.

1. Cora and Jesse are only liable for rents from 1903 to 1907. For years 1890 to 1892 L. B. McDonald's estate is liable, and W. L. McDonald's estate is liable for the rents from 1893 to 1902, all inclusive. Jesse McDonald, a minor, is not liable for rents at all. The land was in possession of her mother, not as guardian but in her own right. Cora is only liable for rents for 1903 and afterwards. Prior to 1903 her husband received the rents. Antoinette Bond is only liable for rents from 1906.

2. The rents from 1890 to 1899, inclusive, should not have been set off against the purchase money. Appellee is chargeable with the half of the purchase money received that was received by her guardian and the attorneys employed in the litigation, the estate having received the benefit of that entire part of the purchase money. 29 Ark. 47; 50 Ark. 447; 86 *Id.* 368. Appellee's claim for rents prior to 1900 was barred by limitation, which applies to set-offs. Kirby's Dig. § 5092.

3. The allowance for improvements under the rule in 71 Ark. 608 is less than shown by the evidence.

4. Appellants are only chargeable with rents on the improvements on the lands at the time L. B. McDonald purchased in the condition such improvements were in *at that time.* 12 Ark. 218, 292-3; 33 *Id.* 490; 42 *Id.* 456; 46 *Id.* 50; 47 *Id.* 528; 445-457; 50 *Id.* 447-455; 61 *Id.* 363, 112 Fed. 4; 50 C. C. A. 110; 3 Dana 573; 4 *Id.* 565; 44 Tex. 572; 4 Blackf. (Ind.) 424; 41 Pac. 1054; 16 Atl. 534; 69 Ga. 804; Sedgw. & Wait, Trial of Title to Land, par. 678; 10 Am. & E. Law, 546; 48 W. Va. 114.

5. A large allowance should have been made for cost of overseeing and superintendence. Mrs. Bond should have credit for expense of overseeing for years 1900 and 1901. Prior to 1900 in estimating the rents for the purpose of setting them off against the purchase money, allowance should have been made during the entire period. *Bona fide* occupants under color of title are entitled to fair and reasonable compensation for cost of supervision, care and management. 5 S. E. 502.

*Rose, Hemingway, Cantrell & Loughborough, Gustave Jones, P. R. Andrews, H. M. Woods* and *H. F. Roleson,* for Rankin.

Appellants are not entitled to recover or offset for improvements, either under the "Betterment Act," or otherwise.

1. The general rule is that no one is bound to pay for improvements placed on land without consent. 4 Pet. 1; 44 Tex. 570; 6 Lea 369; 30 Ark. 412.

2. No statute of limitations applies to this case. The decree was void, and left the suit still pending, and the statute never begins to run in favor of a purchaser *pendente lite* until the suit ends. 22 Tex. Civ. App. 469; Freeman on Judg. § § 136, 205; 19 Ark. 574; 12 *Id.* 583; 29 *Id.* 229; 50 *Id.* 551; 57 *Id.* 229; 3 Cyc. 466; 29 Ark. 90, 336; 79 *Id.* 479; 156 Mo. 513; 72 Miss. 966; 75 Kans. 707; 139 U. S. 216; 21 Enc. Law, p. 619.

3. Conceding that the Betterment Act can, under the Constitution, be applied to lands of infants, it should be done only with extreme caution.

4. Appellants have no title on which they can recover for improvements. They hold under a purchaser *pendente lite,* and paid no new consideration. 15 Ark. 692; 105 Ala. 471; 16 Wall. 361; 31 Minn. 495; 2 Dana 204; 132 Mo. 650; 135 N. Y. 40; 44 Conn. 455; 35 Neb. 361; 3 Ill. 499; 28 Ga. 170-3.

5. McDonald had notice that he was making improvements at his own risk. 70 Ark. 417.

6. A party cannot claim under the Betterment Act for improvements made pending the suit. 2 Woods, 349; 4 Fed. Cas. 1158; 71 Ark. 226; 45 S. E. 285; 50 S. E. 913; 10 Gray, 44; 32 N. Y. 95; 35 S. W. 183.

7. A purchaser *pendente lite* occupies the same position as an original party to the record, and cannot claim for improve-made pending the suit. 25 Cyc. p. 1484 C; 1 Freem. Judg. § 205; 29 Ark. 90; 79 *Id.* 479; 57 S. W. 281; 72 Miss. 966; 90 Pac. 290; 16 A. & E. Enc. Law, 88; 92 S. W. 820; 91 *Id.* 472; 66 N. E. 503; 65 S. W. 662; 125 N. C. 76. It does not matter whether he had notice or not. 91 Pac. 573; 92 S. W. 433; 70 Ark. 415; 57 Ark. 107; 31 *Id.* 493; 45 *Id.* 419; 53 *Id.* 571; 48 *Id.* 189; 57 *Id.* 573, 107; 117 Mass. 393. The doctrine of *lis pendens* does not depend on notice but upon public policy. 21 A. & E. Enc. L. 598; 106 U. S. 696; 93 *Id.* 168; 15 Mo. App. 551; 114 N. C. 151; 57 Ark. 107-8; 12 *Id.* 565, and cases *supra;* 60 Tex. 561.

8. McDonald was bound to inquire as to the validity of the title before buying. 1 Wall. 634; 33 Mich. 464; 50 Ark. 322; 70 *Id.* 415; 81 *Id.* 464; 142 U. S. 437; 81 Ark. 464.

9. McDonald had actual notice.

10. On the vacation of a judgment the winning party is entitled to restitution. 3 Cyc. 466. Rents are a mere incident to the recovery of land. 2 Freem. on Judg. § 482. Section 2756 of Kirby's Digest makes no change in the land except in cases where the occupant recovers for improvements. This is not a case of that kind.

11. The fact that McDonald paid full price for the lands is of no importance. He took the risk and must abide the result. 23 Ark. 259, 266. The Betterment Act was only intended for the meritorious. 48 Ark. 187; 72 *Id.* 110.

12. Purchasers under a void decree acquire *no* title, not even *color,* and are entitled to no protection, and acquire no rights. 70 Ark. 417; 79 *Id.* 199; 81 *Id.* 464; 40 So. 348; 62 Tex. 686; 10 Gray 40, and cases *supra;* 76 Ark. 146.

13. Good faith is requisite under the Betterment Act, and there can be no claim for improvements by one with notice of a

fraud affecting his title. 71 Ark. 99. There is no evidence of good faith on the part of McDonald. He took the risk. 20 Cyc. 86; 6 Vesey, 93.

### EXCEPTIONS TO MASTER'S REPORT.

1. The amount allowed the overseer with interest is error.

2. The improvements allowed for the years specified in the exceptions are not proper charges, even if the court applies the rule in *Brown* v. *Nelms,* 86 Ark. 368. No improvements should be allowed from the time the appeal was taken, February 19, 1900. 70 Ark. 85. All made since then were made *pendente lite.* A *bona fide* possessor of land is one who not only honestly supposes himself vested with the true title but is ignorant that the title is contested by another claiming a superior right. Sedgw. & Wait, Trial of Title, etc. (2 Ed.), § 694. The items for repairs is not a legal charge under the Betterment Act. It is only permanent repairs and taxes. 71 Ark. 605. The rents from 1890 to 1899 were properly used as a set-off against the purchase money. 112 S. W. 385. That appellee is not barred is settled by 81 Ark. 463-4. Appellants were properly charged with rents on the lands as improved by them. 46 Ark. 109; 12 *Id.* 219 (290-295); 33 *Id.* 490; 46 *Id.* 109-122; 47 *Id.* 528; *Ib.* 445; 50 *Id.* 447; 74 *Id.* 422; 52 *Id.* 381; 55 *Id.* 374; 61 *Id.* 26; 70 *Id.* 484; 61 *Id.* 363. It was error to allow 50 per cent. to the actual value of the improvements. 71 Ark. 605.

*Moore, Smith & Moore,* in reply.

Mesne profits consist of the value of the rents after deducting the necessary repairs. Sedgw. & W. Trial to Title to Land, 495; 5 N. E. 502; 54 Ark. 242; 10 Enc. Law, 539, 2 and notes; 101 N. Y. 13. Under the betterment act appellants are entitled to allowance for all improvements, whether the decree was void or voidable merely. Kirby's Dig. § § 2754-5-6. The deed was color of title, regular in form and valid on its face. 48 Ark. 186; 70 Ark. 487; 45 *Id.* 412; 51 *Id.* 275; 112 S. W. 373; 53 Ark. 570. A purchaser at a judicial sale not a party nor privy to the suit, a stranger, is not a purchaser *pendente lite.* 76 Ark. 151-3; 49 *Id.* 416; 34 *Id.* 569; 40 *Id.* 48; 20 *Id.* 583; 50 Ark. 455.

Frauenthal, J., (after stating the facts). The matters that are now involved in this case. and which are presented to

us on this appeal for our determination, relate to the respective rights of the parties to a recovery for improvements and taxes upon the one side, and the rents and profits of the land on the other. The determination of these matters depend principally, if not entirely, upon whether or not the betterment act applies to this case. It has been decided that the appellee is, and has been ever since the death of her father, the true owner of all said lands.

According to the common law, the true owner of the land had a right to the land, and that included the right to enter on it when the possession was withheld, and to have and own the improvements placed thereon by any one, which were considered to be but a part of the land itself; and the true owner had also a right to all the rents and profits issuing from the land. No distinction was made between a *bona fide* and *mala fide* possessor. As to the true owner, the possession of the occupying claimant was wrongful, and he could acquire no rights in another's property by his wrongful acts. But it soon became apparent that this rule was harsh and unjust when lasting and permanent improvements, which actually increased the value of the lands, were placed thereon by an innocent and *bona fide* holder and offset the value of the rents and profits. To cure this harsh rule, the courts of equity adopted the doctrine of requiring the value of the permanent improvements in such cases to be offset against the rents and profits whenever the owner of the lands applied to such court of equity for an accounting by the possessor of the rents and profits. This doctrine was applied in pursuance of the great equitable principle that "he who seeks equity must do equity."

The rights thus recognized by the courts of equity were founded upon the principle that the occupant who thus went into possession of the land in ignorance of the invalidity of his title, although technically a possessor in bad faith because he might have discovered such defect, yet was not to be placed in the position of one who fraudulently takes possession without any title and keeps the true and known owner out of possession. But these rights accorded to such an occupant were only of an equitable nature, and his remedies could only be enforced in a court of equity. The reason and justice of recognizing such rights re-

sulted in the enactment of statutes which granted them as substantive rights, which could be enforced in the very courts that determined the title to the land, and also gave to the occupant a recovery for the amount of the value of the improvements in excess of the value of the mesne profits. *Green* v. *Biddle,* 8 Wheat. 1; 3 Pomeroy, Eq. Jur. (3d Ed.) § 1241; 2 Story, Eq. Jur. § 799a, 799b; Warvelle on Ejectment, § § 546, 557; *Jones* v. *Great Southern Fire Proof Hotel Co.,* 30 C. C. A. 108; *New Orleans* v. *Gaines,* 131 .U. S. 191; *Byers* v. *Fowler,* 12 Ark. 292; *Cunningham* v. *Ashley,* 16 Ark. 182; *McCloy* v. *Arnett,* 47 Ark. 458.

The Legislature of the State of Arkansas in 1883 enacted the statute commonly known as the "Betterment Act," which is embraced in sections 2754-2757, Kirby's Dig. That statute defines (1) the qualifications of the occupant who is entitled to its benefits; (2) it fixes the value of the improvements and taxes which it grants to such occupant; (3) and the amount of the mesne profits which are recoverable by the owner.

1. It is contended by the counsel for appellee that L. B. McDonald, and the appellants claiming under him, are not such occupants as are described in the betterment act; and they base their contention upon the ground that said McDonald purchased the land during the pendency of this suit under a decree which was declared to be void by this court. The question which is thus presented for determination is, What is the character of the occupancy which the possessor must have in order to fall within the provisions of this statute?

The statute describes such occupant to be "any person, believing himself to be the owner, either in law or equity, under color of title, (who) has peaceably improved, or shall peaceably improve, any land which upon judicial investigation shall be decided to belong to another." It thus appears that the person must occupy the land under color of title and with the honest belief that he has title to the land.

In the case of *Fee* v. *Cowdry,* 45 Ark. 410, the court described such occupant as being "one who not only supposes himself to be the true proprietor of the land, but who is ignorant that his title is questioned by some one claiming better right to it." In *Beard* v. *Dansby,* 48 Ark. 183, in describing the require-

ments which such occupant should possess, this court said: "Good faith, in its moral sense, as contradistinguished from bad faith, and not in the technical sense in which it is applied to conveyances of title, as when we speak of a *bona fide* purchaser, meaning thereby a purchaser without notice, actual or constructive, is implied in the requirement that he must believe himself to be the true proprietor. It must be an honest belief and an ignorance that any other person claims a better right to the land."

It was held in *Shepherd* v. *Jernigan*, 51 Ark. 275, that where a party improved lands in good faith, and under the belief that he was the true owner, he is entitled to the benefits of this betterment act, and that such notice as might be gained from the registry of the deed is not sufficient to preclude him from those benefits.

This court, in the case of *Bloom* v. *Strauss*, 70 Ark. 483, held that a *bona fide* occupant who held under a last will which was defective upon its face could claim the benefit of this statute.

In the case of *Brown* v. *Nelms*, 86 Ark. 368, this court held that one who had purchased under a probate sale which was declared void was such an occupant as could claim the benefits of this statute. In that case the purchaser at the judicial sale had been the appraiser of the land that was sold, and upon that account it was held that such sale was fraudulent in law, and on account of such fraud it was void. But the court found that the purchaser acted in good faith and in the honest belief that he would obtain a good title to the land, although he knew the facts which constituted the legal fraud and made the sale invalid. That was a judicial sale, under which a purchase was made, and the parties in interest had a right to appeal therefrom or to institute proceedings to avoid said sale, which they did; so that in that case the occupant was a purchaser during the pendency of the proceedings, under a sale which was afterwards declared void; and this court held that the provisions of the betterment act applied in that case. *Cowling* v. *Nelson*, 76 Ark. 146.

From all these cases it will be seen that the cardinal requisite that the occupant should possess is good faith, and an honest belief in the title under which he occupies the land, and an ignorance of his title being questioned by another who claims a better right, in order for him to be entitled to the benefits of the statute.

He may know the facts which prove the invalidity of his title, yet if, through mistake of the law, he still believes that title good, he can hold in good faith, within the meaning of the betterment act.

The doctrine of *lis pendens* applies to purchasers or others acquiring title from a party to the action, and generally it does not apply to strangers to the suit. But where the decree under which the sale is made is wholly void by reason of some jurisdictional defect, it can confer no title. The purchaser in such instance, although a stranger to the suit, cannot in law be an innocent purchaser so as to acquire the title. But whether this doctrine is founded upon notice, or upon public policy, it only applies to the title itself which is thus acquired, and does not apply to the rights and benefits which are given to the party under the betterment act. The occupant holding under a tax deed which, on account of some jurisdictional defect, is declared void, or holding under a sale made under a decree in some tax proceeding which is declared void, although he knows, or has means of knowing, of these jurisdictional defects in his title, has yet been held to come within the terms of this statute. The constructive notice of the invalidity of the title which will deprive the purchaser at such sale from acquiring the title as an innocent purchaser does not affect the rights of such a purchaser under the betterment act if he obtained the title in good faith and held possession without actual notice that his title was assailed by one claiming a better title.

Ordinarily, there is greater confidence placed in a purchase at a judicial sale than at any other sale, on account of the great confidence reposed by the people in the proceedings of our courts. But if the doctrine of *lis pendens* shall apply to defeat such purchasers of the benefits of the betterment act, they are placed at a greater disadvantage than a purchaser at any other sale. The doctrine of *lis pendens,* it is said, results not so much from notice, but is largely founded upon public policy. And so likewise the provisions of the betterment act, which grant to the *bona fide* possessor of the land a recovery for the value of the improvements made thereon by him, have resulted from public policy. The policy thus advanced by this statute should prevail; and the public policy thus announced by the legislative will would not be

subserved by applying the doctrine of *lis pendens* to those occupying claimants of land who otherwise would be entitled to the benefits of this act.

In this case it is conceded that the purchaser, McDonald, went into possession of the land under color of title, and that title was held to be valid by this court in the first hearing of the cause involving that question. The evidence tends- to show that the purchaser believed in the strength of that title; and, until these supplemental preceedings were instituted, and the summons served on them, he and the appellants had no knowledge of any one questioning that title or asserting a better title to the land. The special chancellor found that these occupants held the lands under color of title in good faith and in the honest belief that they had a perfect title to the land, and these findings appear to be well sustained by the evidence. We are of the opinion, therefore, that the facts of this case bring it within the terms of the betterment act.

The appellants are therefore entitled to the value of all improvements made prior to January 8, 1903, the time that the summons was served herein on them, and to all taxes paid by them and those under whom they claim; and the appellee is entitled to recover all mesne profits that shall have accrued within three years next before the commencement of this supplementary suit.

II. Before the passage of the betterment act, the courts adopted various measures for estimating the value of the improvements that should be allowed to the occupant and the mesne profits that should be allowed to the true owner; some allowed the first cost of the improvements, with interest; others fixed their value at the time of the notice received by the occupant of the title of the true owner; while others fixed their value at the time of the recovery. So, likewise, they differed in the amount of the mesne profits that should be recovered by the owner; some allowing the rents only on the lands without the improvements, and others on the lands as they were improved. *Haskins* v. *Spiller,* 3 Dana, 573; *Barnett* v. *Higgins,* 4 Dana, 565; *Evetts* v. *Tendick,* 44 Tex. 570. The betterment act conferred upon the occupant certain substantive rights, and for the true owner it fixed the definite mesne profits which he could

recover. As is said in the case of *Brown* v. *Nelms*, 86 Ark. 368, the betterment act is "one to adjust equities between the owners of the lands and persons who have occupied the same under color of title, believing themselves to be the owners—*bona fide* occupants. * * * In other words, when the occupant holds in good faith under color of title the owner can recover the land and mesne profits for three years, and the occupant can recover the value of his improvements and amount of taxes."

These are the rights of the parties as fixed by this statute. The statute says that the owner shall be allowed the rents of the lands that shall have accrued within three years next before the commencement of the suit. It deprives the true owner of all the mesne profits that accrued prior to that time, but it gives to him the rents on the lands in the exact condition in which they are for the period subsequent to three years next before the commencement of the suit.

It is urged by the appellants that they should not be charged with the rents and profits arising from the improvements made by them, but only for the rents on the lands in the condition in which they were when McDonald took possession. To sustain their contention, counsel for appellants especially rely upon the case of *State* v. *Baxter*, 50 Ark. 447. But that case is but a continuation of the case of *State use of Garland County* v. *Baxter*, 38 Ark. 462, which was a suit instituted in 1881, long prior to the passage of the betterment act. The principles applied in that case were based upon an accounting which allowed rents without restriction. It was an action to set aside a lease obtained by the occupant for a long term, and under which he had made improvements on the land, which lease was subsequently set aside for fraud. It had no application to the terms of the betterment act.

The various rules that have been formulated by courts of equity in attempting to make equitable adjustments of the rights of the occupant, on the one hand, to the value of the improvements and the taxes paid, and, on the other hand, of the owner to the rents and profits, were based upon such principles of equity as in the opinion of those courts were right. In the uncertainty of these decisions, the betterment act was enacted to definitely fix these respective rights, and it fixed as a substantive right

for the owner of the land the rents of the lands for the period therein named, with the improvements which the lands then possessed. The general rule adopted by the courts for the measure of damages in cases for the recovery of mesne profits is the fair rental value of the lands during the period of the withholding. Analogous to that ruling, the measure of rents and profits which are recovered under the betterment act is the fair rental value of the lands in their improved condition during the period named in the betterment act. This means the net rents—that is to say, the amounts expended for necessary repairs and for such necessary expenses as under the custom of the country have been paid for management and collection of the rents should be deducted from the gross rental value. This is on the theory that the owner would have had to have done this. Warvelle on Ejectment, § 543; *Wallace* v. *Berdell,* 101 N. Y. 13; *Hodgkins* v. *Price,* 141 Mass. 162.

It is urged by appellants that Cora and Jesse McDonald should not be charged with the rents for the years of 1900 and 1901, because the rents for those years were actually not collected or received by them but by W. L. McDonald, who has since died, and whose estate is not brought into this restitution suit. But these appellants became entitled to the value of the improvements, for which they are allowed a recovery, which were placed upon the lands, not by them, but by him under whom they claim, and he would be chargeable with these rents. To the extent of the fund so received by them for such improvements, it is but equitable that they should be charged with said rents; and, inasmuch as the value of the improvements exceeds the amount of the rents for those years, they should be charged with the entire rents of those years.

The rents of the lands that accrued prior to December 20, 1899, cannot be recovered by the appellee, by virtue of the betterment act; but upon equitable principles these rents should be set off without restriction against the claim of appellants for reimbursement of the purchase money received by the appellee. The appellants are entitled in equity to recover such portion of the purchase money paid under said invalid sale for said land which was actually received by the appellee, for the reason that appellee now recovers the land, which was the sole consideration

for the money so paid, and it is but equitable that reimbursement should be made therefor. But during the years prior to 1900 those paying the purchase money received the rents and profits from these lands, and therefore, upon equitable principles, those mesne profits for the full period, and without restriction, should be applied on such claim for reimbursement of the purchase money.

It is urged by the appellants that for the years prior to 1900 they should not be charged with the mesne profits from improvements made by them, but only with the profits of the lands in the condition that they were when McDonald took possession. But it is unnecessary to pass upon this contention, for the reason that, according to the value of the rents as found by the master, and which finding is approved, the rents of the lands with only said original improvements would exceed the largest amount of said purchase money that can be claimed to have been received by the appellee; and this is true when the purchase money and the rents are apportioned to the respective tracts occupied by the respective appellants.

Upon the tract of land occupied by appellant Bond a house was burned and rebuilt by the occupant. This house had been insured by the occupant for a number of years for $1,050, and the insurance money was collected by the occupant. This sum was by the master charged to the appellant Bond as a part of the rents, but was disallowed by the special chancellor. The contract of insurance was a personal contract of appellant Bond, and the consideration was paid solely by her. The insurance money, therefore, did not in law arise from the property, but was payable to the appellant Bond by reason of her personal contract with the insurance company. She was therefore not chargeable therewith. *Roesch* v. *Johnson,* 69 Ark. 30; *Langford* v. *Searcy College,* 73 Ark. 211.

The appellee is entitled to recover interest on all rents from the time they were received by appellants and those under whom they claim. 15 Cyc. 208; *Nunn* v. *Lynch* 89 Ark. 41. Likewise the appellants are entitled to recover all taxes and the interest on all taxes paid by them and those under whom they hold the land from the time such taxes were paid.

III. Under the evidence in this case, all the improvements were made prior to the service of the summons in this supple-

mental proceeding, and therefore the occupying claimants must be paid the value of those improvements. The value of the improvements are determined at the time of the recovery, for that is the time they are turned over to, and go into the usable possession of, the holder of the title. In *Summers* v. *Howard*, 33 Ark. 490, this court, in speaking of the time when the value of the improvements should be estimated, said: "Such allowances (for improvements) are made upon the ground that the improvements do in fact pass into the hands of the plaintiff as a new acquisition; and they can only be a new acquisition to him to the extent of their value at the time he recovers or obtains possession of them; and therefore their value at that time is to be allowed, and nothing more." Warvelle on Ejectment, § 558; 15 Cyc. 222; *Greer* v. *Fontaine*, 71 Ark. 605.

The value thereof is based upon the enhanced value which these improvements at the time of the recovery impart to the land. But such enhanced value of the land should arise solely by reason of the improvements themselves, and should be determined only by the ordinary considerations that would apply to lands that are similarly situated. The condition of the improvements at the time of the recovery should be taken into consideration. The difference between the value of the land without the improvements and the value of the land with the improvements in their then condition would be a just sum to allow therefor. In any event no value that the land might impart to the improvements should be considered in estimating the value of such improvements. The reasonable cost in making the improvements, their deterioration, if any, or the reasonable cost of making them at the time of the recovery in their then condition, may well be taken into consideration in arriving at the value of such improvements.

In determining the value of these improvements, the master found the amount of the cost thereof at the time of the recovery, and then added fifty per cent. thereof to such cost, on the theory that, under the testimony, the value of the land was thus enhanced by these improvements in excess of their cost. This estimate of the value of the improvements was approved by the special chancellor. This is an arbitrary mode of fixing such valuation, rather than one based on the actual value of the bet-

terment and amelioration of these improvements to the land. The value of the improvements should not exceed the cost of making them or replacing them at the time of the recovery and in the condition in which they are at that time. *New Orleans* v. *Gaines*, 15 Wallace, 624.

The special chancellor properly refused to grant to Sallie Spott Rankin the immediate possession of the land at the time of her application. The betterment act is applicable to this case, and that statute provides that "no writ shall issue for the possession of the land in favor of the successful party until payment has been made to such occupant of the balance due him for such improvements and the taxes paid." Kirby's Dig. § 2755. Until the accounting of these matters was had and a final determination thereof made, the possession of the lands should not have been given to her. Such an order was also on this account not such a final order from which an appeal would lie. Ex parte *Crittenden*, 10 Ark. 33; *Fitzpatrick* v. *Phillips*, 41 Ark. 85; *Davie* v. *Davie*, 52 Ark. 224; *Cohn* v. *Huffman*, 52 Ark. 436; *Hargus* v. *Hayes*, 83 Ark. 186; *Brown* v. *Norvell*, 88 Ark. 590.

In the final decree of the Woodruff Chancery Court, it was ordered and decreed that the appellee recover all the lands; that a writ of restitution issue to her for immediate possession of the lands which were claimed by appellants Cora and Jesse McDonald; and that a writ of restitution should be issued to her for the lands claimed by appellant Antoinette Bond after the payment of said sum, which was the amount of the balance of the value of the improvements made on said lands and found by the court as still due to said appellant.

Under the findings of the chancellor this portion of the decree relative to the possession of the lands was correct. But, as hereinafter directed, a restatement of the accounts of the matters upon which the findings of the court were based will be ordered by this court. And if, as a result of such an accounting, it shall be found that nothing is due to either of the appellants upon the improvements and taxes upon the respective tracts, then immediate writs of restitution will issue to the appellee for such tract or tracts.

The findings of the special chancellor and the decree rendered by him are, in the main, in accord with this opinion; but

in some particulars they do not conform with it. The decree will therefore be reversed.

But we are of the opinion that the findings of the special master of the Woodruff Chancery Court are amply sustained by the evidence as to the values and the amounts of taxes, rents, interest and all other matters submitted to him and set out in his report, except as to the improvements; and as to the improvements we are of opinion that his findings of the actual cost thereof at the time of the recovery will give the true value thereof, with which amounts the appellants should be credited, and that the only error committed in that regard was in adding to such cost the additional sum of fifty per cent. of such cost. We are of the opinion that a restatement of the account as to all matters involved herein and submitted to said special master can be made from the evidence taken by the special master, so that it will conform with this opinion and without taking any additional testimony.

For this reason we do not think it necessary to remand this cause in order to make such a restatement of these accounts; but we deem it advisable that a special master be appointed by this court for the purpose of making a restatement of said accounts from the evidence as appears in the report of the special master (and which is a part of the record of the case) which will conform with this opinion.

To that end therefore a special master will be appointed by this court. Said special master will be directed to take the evidence contained in the report of John G. Haralson, the special master of the Woodruff Chancery Court, and which is a part of the record herein; and from said evidence to make and state an account of the improvements, taxes and mesne profits of the lands, together with interest on the taxes and mesne profits between the respective parties to this suit, and in accordance with this opinion. In making and stating said accounts, he will make and state separate accounts of all the above matters relative to the lands that were in the possession of the appellant Antoinette Bond, and which are called in said special master's report the "Bond" place, and relative to the lands that were in the possession of the appellants Cora and Jesse McDonald, and which are called in said report the "McDonald" place. And this

cause will be continued for further orders of this court after said report of the special master of this court shall be taken, made and filed in this court. And thereupon this cause will be remanded to the Woodruff Chancery Court with directions to enter a decree in accordance with the opinion of this court.

BATTLE, J., and HART, J., dissent from so much of this opinion as allows to appellee rents of lands with improvements made by appellants and those under whom they claim.

### ON REHEARING.

#### Opinion delivered October 25, 1909.

FRAUENTHAL, J. The appellants and appellee respectively filed motions herein for a rehearing. After due consideration of said motions we are of the opinion that the motions should be overruled, except as herein indicated.

By our opinion in this case the findings of the special chancellor were in all things approved, except only as to his finding of the value of the improvements made on the lands by appellants and those under whom they claim. As to the value of those improvements, we held that the sole error in the finding of the special chancellor was in adding to the cost thereof the sum of fifty per cent. of such cost; and we held that "as to the improvements we are of the opinion that his findings of the actual cost thereof at the time of the recovery will give the true amounts thereof, with which amounts the appellants should be credited." The appellee has filed a motion in which she states that according to the finding of the special chancellor the said cost of the improvements made on the land claimed by appellant, Bond, amounted to $5,865, to which the special chancellor added $2,932.50, being fifty per cent. of same, and which latter finding only was disapproved; that if the amount of the final balance found by the special chancellor as due to the appellant, Bond, towit: $2,591.88, should be deducted from this disallowed item of credit of $2,932.50, it would represent the true final amount due to appellee from appellant Bond on the accounting, towit: $340.62. That the said cost of the improvements made on the lands claimed by appellants Cora and Jesse McDonald amounted to $2,520, to which the special chancellor added $1,260

being fifty per cent. of same, and which latter item only was disapproved; that if to the final balance found by the special chancellor as due by the appellants McDonald, towit, $4,662.81, should be added this disallowed item of credit of $1,260, it would represent the true final amount due to appellee from the appelants Cora and Jesse McDonald upon the accounting, towit: $5,922.81; and the appellee asks that the portion of the order in our former opinion which refers the restating of an account to a master be set aside, and that the opinion and the decree be modified as above stated.

Upon further examination of the report of the special master and the findings of the spcial chancellor, we are of the opinion that the above correctly states the cost of the respective improvements at the time of the recovery made on the two tracts, and that in fixing the value of said improvements at said amounts the rights of appellants cannot be prejudiced. The value of said improvements are therefore found as above stated. It follows that, upon said final accounting of the improvements, taxes, and mesne profits, there is due by the appellant Antoinette Bond to the appellee the sum of $340.62, and that there is due by the appellants Cora and Jesse McDonald to the appellee the sum of $5,922.81; and that these should have been the findings of the special chancellor, and a decree rendered in favor of appellee for these respective amounts and a recovery of the lands. The order heretofore made herein for the appointment of a master and the reference to him for a restatement of the account is set aside. The former opinion of this court is modified so as to to conform with this additional opinion.

That portion of the decree of the Woodruff Chancery Court which grants to the appellee the restitution of the land claimed by the appellants Cora and Jesse McDonald and recovery against said appellants of $4,662.81, is modified so that it will decree in favor of the appellee the recovery of said lands claimed by appellants Cora and Jesse McDonald and a recovery against said appellants of the sum of $5,922.81; and the decree of the chancery court as to said appellants Cora and Jesse McDonald, thus modified, is affirmed.

That portion of the decree which finds in favor of the appellant Antoinette Bond, for a balance due on improvements and

postponing the restitution of the lands claimed by said appellant Bond is reversed; and said portion of the cause is remanded to the Woodruff Chancery Court with directions to enter a decree in favor of appellee for immediate recovery of said land claimed by appellant Bond and a recovery against said Bond for the sum of $340.62.

We do not enter a decree in this court in favor of appellee and against the appellant Antoinette Bond in accordance with the above opinion for the reason that the title to land is herein involved, and that portion of the decree is reversed. Where the decree of the lower court involving title to land is reversed, this court thereupon remands the cause to the lower court, with directions to enter a decree in that court in accordance with the order and opinion of this court.

In the McDonald branch of this case the lower court entered a decree in favor of the appellee for the land, and that much of that portion of the decree we have affirmed. We have only modified in that branch of the case the amount of the damages that appellee should recover. Therefore that portion of the decree can be modified, and, as modified, affirmed.