Robert L. CROUCH et al v. John CROUCH et al
5-4573                                    431 S. W. 2d 261

Opinion delivered May 13, 1968
[Supplemental opinion on denial of rehearing, September 9, 1968.]

*Kirsch, Cathey & Brown,* for appellants.

*Rhine & Rhine,* for appellees.

CARLETON HARRIS, Chief Justice. This is the second appeal in this case. In *Crouch* v. *Crouch,* 241 Ark. 447, 408 S. W. 2d 495, this court, in reversing the Chancery Court decree, held that tax deeds, obtained by two heirs of W. M. Crouch, deceased, to a certain 160 acres of land in Greene County, Arkansas, amounted only to a redemption for all heirs of W. M. Crouch, the two being co-tenants with the others. The two who had purchased the tax titles deeded the property to Harold J. Conrad and wife, appellees herein, endeavoring to convey absolute ownership. The appellees cleared the 160 acres, and farmed the land in 1964. The Greene Chancery Court, following our opinion, held on April 3, 1967, that appellants owned collectively an undivided 5/7 interest in the 160-acre tract, and that Conrad and wife owned a 2/7 interest, and it was determined that a partition sale should be held. No testimony was taken at that time, and the court, on the basis of the evidence at the first trial (before the reversal), held that the Conrads should have compensation for the clearing of the acreage, from the sale proceeds, to the extent of $200.00 per acre, totaling $32,000.00. It was found that the value of the lands before the clearing was $150.00 per acre ($24,000.00), and that the total value of the lands, as of the time of the order, was $350.00 per acre, totaling $56,000.00. The sale was held on June 3, 1967, with appellees being the highest bidders, the amount of the bid being $28,500.00, approximately $178.00 per acre. Pursuant to a motion filed by appellants, and after a hearing, the court set aside all portions of its April 3 decree with respect to the amount which the Conrads were to receive for clearing the lands, and refused to confirm the sale due to the inadequacy of the bid. A new hearing was set for August 2, 1967, at which time ap-

pellants asked that the hearing be postponed on the matter of improvements until after another sale (which request had also been made at the April 3 hearing). The court refused the request, and proceeded to take evidence relating to the value of the land. At the conclusion of the hearing, the court found that the value of the lands was $48,000.00, holding that the value of same before being cleared was $24,000.00, and that the clearing had given an additional value of $24,000.00. Though the Conrads had not complied with the provision of the April 3 decree which required them to account for rents they had received since 1963 (this particular provision not having been vacated), the court awarded appellees a lien on the proceeds of the sale to the extent of the first $24,000.00 received therefrom, and authorized the Conrads to bid at the new sale without making any bond, except as to bids in excess of $24,-000.00. At the sale, the Conrads were again the highest bidder, the bid, however, this time, amounting to only $25,100.00, or approximately $157.00 per acre. The Greene Chancery Court overruled appellants' objection to this sale, and refused to vacate or modify its findings of August 2. This appeal is from the August 2 decree, it being contended that the court erred in awarding the Conrads a lien upon the first $24,000.00 received, and that the court should have held that the primary equity was the right of appellants to receive 5/7 of this amount; further, that the award to appellees for clearing the land should have been based upon the actual sale price obtained at the sale, and that the court should have required appellees to render an accounting for any rents or profits before ordering the sale.

Though, as pointed out by appellants, the fact that the sales only brought the prices of $28,500.00 and $25,-100.00 somewhat indicates that the values established by the Chancellor were erroneous, it is not necessary to discuss that phase of the case in this opinion, for we think clearly that the court erred in not first requiring appellees to account for any rents or profits derived

from farming the lands. Ark. Stat. Ann. § 34-1423 (Repl. 1962), the first section of the "Betterment Act," provides that any person who, believing himself to be the owner, under color of title, has peaceably improved any land, which shall judicially be determined to belong to another, shall be entitled to the value of improvements made, and the amount of taxes paid. Section 34-1424, the second section of the act then provides:

"The court or jury trying such cause shall assess the value of such improvements in the same action in which the title to said lands is adjudicated; and on such trial the damages sustained by the owner of the lands from waste, and such mesne profits as may be allowed by law, shall also be assessed, and if the value of the improvements made by the occupant and the taxes paid as aforesaid shall exceed the amount of said damages and mesne profits combined, the court shall enter an order as a part of the final judgment providing that no writ shall issue for the possession of the lands in favor of the successful party until payment has been made to such occupant of the balance due him for such improvements and the taxes paid; and such amount shall be a lien on said lands, which may be enforced by equitable proceedings at any time within three [3] years after the date of such judgment."

It is at once apparent that appellees are not entitled to any lien until it is established that the value of the improvements exceed any profits made, or any damage to the land.

Under this statute, appellants were entitled to receive credit for 5/7 of any rents and profits realized before the sale was held. Of course, appellees were given an advantage in being permitted to bid with a credit of $24,000.00, for they were only required to give bond for any amount in excess of that figure. Then too, the amount awarded actually was, in effect, a judgment against the appellants, and they were entitled to the

proportionate share of rents and profits more or less as an offset against the amount awarded for clearing the land. This view was expressed as early as 1909 in the case of *McDonald* v. *Rankin,* 92 Ark. 173, 122 S. W. 88, which probably has been cited more than any other Arkansas case in litigation involving the betterment act. The case is comprehensive, and covers most, if not all, questions that might arise under this statute. Relative to rents and profits, the court further said:

"The various rules that have been formulated by courts of equity in attempting to make equitable adjustments of the rights of the occupant, on the one hand, to the value of the improvements and the taxes paid, and, on the other hand, of the owner to the rents and profits, were based upon such principles of equity as in the opinion of those courts were right. In the uncertainty of these decisions, the betterment act was enacted to definitely fix these respective rights, and it fixed as a substantive right for the owner of the land the rents of the lands for the period therein named, with the improvements which the lands then possessed. The general rule adopted by the courts for the measure of damages in cases for the recovery of mesne profits is the fair rental value of the lands during the period of the withholding. Analogous to that ruling, the betterment act is the fair rental value of the lands in their improved condition during the period named in the betterment act. This means the net rents—that is to say, the amounts expended for necessary repairs and for such necessary expenses as under the custom of the country have been paid for management and collection of the rents should be deducted from the gross rental value."

Appellees argue that appellants have lost their right to prosecute this appeal, and are estopped to challenge any findings of the lower court set out in the original decree (April 3), or amendment thereto. This argument is based on the fact that appellants had filed a notice of appeal to the original decree of April 3, but

did not prosecute same. The sale was held and subsequently set aside by the trial court, which amended its decree on August 2. We do not agree with appellees' contention. The court had a right to set aside the sale, and, at any rate, appellees are not in a position to complain, since they did not appeal from the order setting aside the sale and amending the April 3 decree. Appellees further state that appellants did not make a supersedeas bond, but permitted the commissioner to proceed with the sale, and actually took part in the bidding. We do not consider this last fact (taking part in the bidding), since this does not appear in the original record, and is offered as a supplement to the transcript through the affidavit of Gerald Phillips, Chancery Court Clerk and Commissioner in Chancery. The affidavit relates to matters that took place at the sale, was not offered into evidence at any hearing, and was not designated by either side as a part of the record for the purpose of this appeal. As to the failure to make a supersedeas bond, it may well be that appellants were unable to make this bond, and were therefore powerless to prevent the sale. Of course, it is quite likely that, if the property had been purchased for a price commensurate with the value placed upon it by appellees (and found by the court), this appeal would not have been pursued, but, feeling aggrieved at the findings of the court, appellants are entirely within their legal rights in bringing this appeal.

Because of the court's error, as herein pointed out, the decree is reversed, and the cause remanded for further proceedings.