McDONALD *v.* KENNEY.

Opinion delivered November 13, 1911.

1. MASTER—WHEN APPOINTED BY CONSENT.—Where the parties to a suit in equity agree that the questions of fact in issue shall be submitted to a master, it becomes a consent reference, although the individual to whom the reference is made is named solely by the chancellor. (Page 15.)

2. MASTER—EFFECT OF REFERENCE.—Where the parties to a suit in equity involving an accounting agree to the appointment of a master without specifying his powers, it will be inferred that it was intended to invest him with the powers and charge him with the duties prescribed by statute, which are to take testimony and state an account between the parties according to the facts. (Page 16.)

3. APPEAL AND ERROR—CONCLUSIVENESS OF MASTER'S FINDINGS.—Findings of fact by a consent master have the same conclusiveness as the verdict of a jury or the findings of fact by a court sitting as a jury. (Page 16.)

4. MASTER—EFFECT OF FINDINGS OF LAW.—Where no questions of law were submitted to a consent master, his conclusions of law are not binding upon the parties. (Page 17.)

5. EJECTMENT—BETTERMENT ACT—RIGHT TO RECOVER RENTS.—Under the betterment act, the owner of land is entitled to recover all rents issuing from the property during the three years, next before the commencement of the suit, both from the land and the improvements thereon. (Page 17.)

6. SAME—RIGHT OF OCCUPANTS TO RECOVER EXPENSE OF COLLECTING RENTS.—Under the betterment act an occupant of land is entitled to receive credit for all moneys which, according to the custom of the country, he has paid for the management of the property and the collection of rents, but such credits will not be allowed unless such expenses were actually incurred by being paid out by him. (Page 18.)

7. SAME—INTEREST OR RENT.—An occupant of land who is chargeable with rent under the betterment act should be charged with interest

on the annual rental for three years, calculated from the end of each year.   (Page 18.)

8   SAME—INTEREST ON IMPROVEMENTS.—An occupant of land under the betterment act is entitled to recover the value of his improvements at the time of the recovery, but not to recover interest thereon from the time the improvements were first made.   (Page 19.)

SAME—RIGHT TO RECOVER TAXES PAID.—Under the betterment act, the occupying claimant is entitled to recover the amount of all taxes paid by him or by those under whom he claims, together with interest thereon from the date of such payments.   (Page 20.)

10. SAME—RIGHT TO RECOVER TAXES PAID BY FORMER CLAIMANT.—A purchaser at judicial sale deraigns title from the person whose title is sold, and claims under him within the meaning of the betterment act. (Page 20.)

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; reversed.

*Winchester & Martin,* for appellant.

1.   The chancellor can not arbitrarily disregard the findings of fact by the master.   The conclusions reached by a master upon conflicting testimony have every reasonable presumption in their favor, and will not be set aside or modified unless there clearly appears to have been error or mistake on his part.   125 U. S. 136; 92 Ark. 361-363.   But where, as in this case, the master was appointed by consent of the parties, not only does the presumption of the correctness of the master's findings prevail, but "his findings of fact are entitled to the same conclusiveness as is given to the verdict of a jury or the findings of fact by a court sitting as a jury."   91 Ark. 298; 85 Ark. 419; 74 Ark. 338.

2.   Appellees are not entitled to credit for the taxes paid upon their respective lots from the death of John Hare to the date of their respective purchases.   The taxes on these lots were paid by Mary A. Hare during her lifetime and by her administrator until, by orders of the probate court, they were sold to pay debts of Mary A. Hare and legacies under her will. Appellees are purchasers at a judicial sale, and are not in such privity with Mary A. Hare as, under the terms and evident intent of the betterment act, to claim under her, or to have entered and hold under her.   Kirby's Digest, § 2754; 47 Ark. 419;  92 Ark. 173;  86 Ark. 368.

3.   The court erred in directing the master to credit Lillie Kenney with six per cent. interest on the value of the

improvements made upon her two lots by Mary A. Hare from the date of the purchase of said lots by Lillie Kenney to the date of his report.

*Hill, Brizzolara & Fitzhugh* and *Read & McDonough,* for appellees.

1. While it is true that when this case was first before the lower court it was agreed by the parties that, in the event it was reversed, the court might refer the question of mesne profits, improvements, taxes, etc., to a master, yet this is not consenting to the appointment of a master, in the sense used in the cases referred to by appellant. In those cases the parties agreed upon the person who should act as master.

Regardless of any agreement the parties may have made, it was proper for the chancery court to retain the case, and after that to appoint a master to state the accounts. 92 Ark. 28.

The report of the master has, at most, no greater force than the verdict of a jury, and yet the lower court has the right, where there is a substantial conflict in the testimony, to set aside the verdict of a jury. 91 Ark. 292; 144 U. S., 36 L. Ed., 552, 557; 145 U. S. 132.

2. The requisites of the betterment act, Kirby's Digest, § 2754, under which appellees claim the right to taxes paid by Mary A. Hare and her administrator, are that the persons claiming under it should have had color of title, and peaceably improved the land. In such case they are entitled to the value of the improvements, and to the amount of all taxes which may have been paid on the land by such persons or the persons under whom they claim.

As to the Lillie Kenney property, it was improved by Mrs. Hare after the death of her husband. Clearly under the evidence and the rule established by this court she had color of title, and in making the improvements acted in good faith. 70 Ark. 483.

Appellant can not escape the force of the betterment act on the ground that appellee purchased at the administrators sale. True, the land was sold under order of the probate court, but it was sold as the land of Mary A. Hare, and such title as they have is derived from her.

3. The master erred in his method of calculating interest

upon the rents collected in the case of Lillie Kenney. She should have been charged with net rents only, and was entitled to have deducted from the gross rents a fair compensation for necessary time and labor involved in the care and management of the premises and in the collection of rents. 141 Mass. 162; 96 Ark. 188. Moreover, it was erroneous to calculate interest on the rents in monthly periods. Kirby's Digest, § 5386.

FRAUENTHAL, J. This is the second appeal of this case to this court. The opinion rendered upon the former appeal is reported under the style of *McDonald* v. *Shaw*, in 92 Ark. 15. These suits were originally instituted in the circuit court by Ella Hare, through her guardian, to recover from the respective defendants certain lots situated in the city of Ft. Smith. Subsequently, the suits were consolidated and transferred to the chancery court, where a decree adverse to the plaintiff was rendered. Upon the former appeal, it was decided that Ella Hare was the owner of the lots sued for, and entitled to the possession thereof. The cause was then remanded to the chancery court to adjudicate the rights of the parties to the rents of the lots, the improvements made and the taxes paid thereon. The matters involved on this appeal relate solely to those rights.

The plaintiff asserted title to the lots by inheritance from her father, John Hare, who died on January 2, 1883, seized and possessed thereof. He left a will devising all his property to his wife, Mary Hare, which was declared ineffective, because it omitted to mention the name of his child or to make any provision for her. The will, however, had been duly probated, and Mrs. Hare, believing in good faith that it was perfectly valid and effective in devising to her the absolute title to the lots, took possession and exercised acts of ownership thereof until her death, on September 25, 1892. She made permanent improvements upon some of the lots, and paid taxes on all of them to the date of her death. After her death, her administrator took possession of the lots involved in this litigation, and, under and in pursuance of orders of the probate court, sold and conveyed them to the respective defendants herein.

Upon the first trial of this cause below, the respective parties agreed and stipulated in open court, in effect, "that if

the court should find against the said defendants and cross plaintiffs on the issues made by their answers and cross complaints, said causes should then be referred to a master to take testimony as to the mesne profits due the plaintiff, if any, from the said defendants respectively, and as to the amounts due the defendants respectively for improvements made and taxes paid by them, or either of them, upon the property in controversy in said several cases."

When this case was remanded to the chancery court on the former appeal, the matters involving said rents, improvements and taxes were by the court referred to its clerk and master, with directions to take testimony and to ascertain, amongst other things, the fair rental value of each lot for a period of three years next prior to the institution of the suits, the value of the improvements at the time of the recovery, the amount of the taxes paid during each year upon each lot from the date of the death of said John Hare to the filing of his report and by whom, and to report his findings relative thereto. In pursuance of said order and directions, the master took the testimony of numerous witnesses, by depositions relative to all these matters. He filed an original and supplementary report, in which he made findings: (1) of the rental value of each lot claimed and occupied by the respective defendants for three years next prior to the commencement of these suits, and found that such rents were collected monthly. He charged such rents to the respective defendants from their respective purchases during the above period, and also charged said parties with interest on said rents, calculating same from each month, in advance, to the date of said report, and credited them with necessary repairs made by them. (2) He found the value of the improvements at the time of the recovery made upon each lot, and credited each of the defendants with the respective amount thereof. (3) He found the amount of the taxes which each defendant had paid upon his respective lot, and allowed the same as a credit with interest thereon, calculated from the date of each payment to the time of filing his report. (4) He also found the amount of the taxes that had been paid each year on each of said lots by Mrs. Mary Hare and her administrator from the date of the death of John Hare to the time of the respective purchases made by each of the

defendants. He, however, made no finding as to whether or not such taxes should be credited to the defendants.

The master thereupon made a statement in accordance with the above findings, showing the amount of the charges and credits which he made as to each defendant, and the balances resulting therefrom.

All parties made numerous specific exceptions to the report of the master. The chancellor examined the report of the master and all the testimony taken by him, and from both the report and the testimony passed upon said exceptions to the report. He sustained a number of these exceptions, and in all other respects he approved the findings and report of the master. Some of the exceptions which the chancellor sustained relate to items involving questions of law as to whether or not such items should be allowed, either as a charge or credit. Other exceptions sustained by him relate to the findings of fact made by the master as to the value of the rents and of the improvements.

The objections now urged upon this appeal relate to the findings and decree of the chancellor and chiefly to the following matters:

(1) His action in changing the finding of the master as to the value of the improvements on the respective lots and as to the rental value of same.

(2) To his finding and order that the defendants should be credited with the taxes paid on the respective lots from the death of John Hare to the date of the purchases of said lots by the respective defendants.

(3) To the action of the chancellor in allowing a credit of ten per cent. on the rents for the collection thereof.

(4) To the action of the chancellor in crediting defendants with interest upon the value of the improvements.

The evidence clearly shows, and it is conceded by the parties, that Mary Hare, the widow of John Hare, the original owner of these lots, believed in good faith that she obtained absolute title to the lots by virtue of the will of her husband devising same to her. Possessing this good faith, and ignorant of her title being questioned by any one, she went into possession of said lots under said will and made permanent improvements on some of them, and paid taxes on all of them from the

date of the death of John Hare until her own death. Her administrator, with the same good faith and under the same color of title, paid taxes on the lots until he sold and conveyed the same in due course of the administration of her estate to the respective defendants. The defendants, after obtaining such conveyances, went into possession of said lots in the same good faith and in ignorance of said title being questioned by any one. The facts of this case bring it, therefore, within the terms and provisions of section 2754 *et seq.*, Kirby's Digest, commonly known as the "Betterment Act." *Bloom* v. *Strauss*, 70 Ark. 483. The defendants, who are the occupying claimants of the lots, are therefore entitled to the value of all improvements made thereon up to the time of the institution of these suits, and of all taxes paid thereon by them and by those under whom they claim. The plaintiff, who is the true owner of the lots, is entitled to the fair rental value thereof for three years next prior to the commencement of these suits. The master made findings as to all these matters, and duly filed his report thereof. Some of these findings were approved by the chancellor; others were by him disapproved and different findings were made by him relative thereto.

In determining the effect that should be given to these respective findings made by the master and the chancellor, it is necessary to consider the nature of the reference which was made to the master; that is, whether the master to whom the reference was made was a consent master, or one appointed solely upon the motion of the chancellor. In their brief, counsel for defendants say: "It is true that when this case was first before the lower court it was agreed by the parties that, in event it was reversed, the court might refer the question of mesne profits, improvements, taxes, etc., to a master." They contend, however, that the master so appointed was not what is known as a consent master, because the parties did not agree as to the person who should act as such master. Counsel for appellee concede that, by agreement of the parties, a consent reference of these matters was made to a master, and they only claim that he was not a consent master because the chancellor himself named the individual who should act as such.

Parties have a right to have a court determine by its own judgment the questions of fact and of law involved in any

controversy. But they can also agree upon a special tribunal to settle such matters. When that is done, then the findings made by such special tribunal as to questions of fact have no less weight than that of a jury. This principle is founded upon the right of the parties to select and agree upon a tribunal other than the chancellor for a settlement of their controversy relative to certain questions. *Davis* v. *Schwartz*, 155 U. S. 631; *Claypool* v. *Johnston*, 91 Ark. 549. The personnel of such tribunal does not affect the weight which should be given to its findings. If the reference is made by consent of the parties, then it becomes a consent reference, although the individual to whom such reference is made is named solely by the chancellor. The master thus appointed under a consent reference becomes a consent master. He becomes a consent master, not because he has been agreed upon by the parties as the individual to settle the controversy, but because the controversy has by consent of the parties been referred to a tribunal other than the chancellor, to whom the parties have thus agreed to refer for decision certain matters. The court simply ratifies the agreement of the parties for a reference, when in pursuance of their consent it names the person to act as master. Such a master is then a consent master as to all matters thus referred to him. When the agreement of the parties does not specify the powers of such master, "it will be inferred that it was intended to invest him with the powers, and charge him with the duties, prescribed by statute, which are to take testimony and state an account between the parties according to the facts." Kirby's Digest, § 6633; *McVeigh* v. *Chicago Mill & Lumber Co.*, 96 Ark. 480.

It has been settled by this court that "findings of fact by a consent master have the same conclusiveness as the verdict of a jury or the findings of fact by a court sitting as a jury. * * * Where there is any testimony legally sufficient to support such findings, they will not be set aside." *Crenshaw* v. *Combs*, 74 Ark. 336; *Paepcke-Leicht Lumber Co.* v. *Collins*, 85 Ark 414; *Griffin* v. *Anderson-Tully Co.*, 91 Ark. 292; *Claypool* v. *Johnson*, 91 Ark. 549; *Carr* v. *Fair*, 92 Ark. 359; *McVeigh* v. *Chicago Mill & Lumber Co.*, *supra*.

Counsel for defendants concede, as stated by them in their brief, that the parties agreed for a reference to a master of the

questions relative to the rents, improvements, taxes, etc. Although the chancellor named his clerk and master as the person to whom such reference should be made, he was a consent master.

The testimony relative to the value of the rents and of the improvements is conflicting. There is testimony legally sufficient to support the findings made by the master as to these values, and therefore his findings should not be set aside. There was, however, no reference, made to the master of any question of law, and therefore the parties are not bound by any conclusion of law that was made by him. *McVeigh* v. *Chicago Mill & Lumber Co.*, *supra*. The values of the rents and improvements are questions of fact; but the rights of the parties to recover special items—such for example, as interest, taxes and commissions on rents—are questions of law. It was therefore the duty of the court to determine whether or not the parties were entitled to recover such items. Bearing these principles in mind, we will now note the exceptions which the chancellor sustained to the master's report:

1. The chancellor sustained the exceptions made to the findings of the master relative to the value of the improvements made on the respective lots, and also as to the value of the rents thereof. He set aside such findings, and made findings of his own relative thereto. Inasmuch as the findings of the master as to these questions of fact were sustained by legal evidence, the chancellor erred in disturbing them. Both the master and the chancellor in determining the value of rents took into consideration the improved condition of the lots during the three years next before the commencement of these suits; that is, they allowed rents during that period upon the lots and the improvements placed thereon by defendants. This was in conformity with the holding in that regard made in the case of *McDonald* v. *Rankin*, 92 Ark. 173. The rents are allowed to the true owner for only the limited period of three years by reason of the Betterment Act which, in adjusting the equities between the parties, also arbitrarily allowed all rents issuing from the property during that period, both from the land and the improvements thereon during those three years. We see no reason to change this ruling. If the vacant lots had a rental

value, the defendants are chargeable therewith also because they were withholding same from the true owner.

2. The master refused to allow the defendants any credit for the collection of rents. The chancellor sustained exceptions to this part of the master's report, and allowed to defendants a credit of ten per cent. thereof for the collection of such rents. The testimony shows that a commission of ten per cent. for the collection of rents was a reasonable charge made by those engaged in the business of collecting rents. But the testimony also shows that the defendants either occupied the premises themselves or actually collected the rents themselves. They employed no one, and did not expend anything to collect said rents.

In the case of *McDonald* v. *Rankin, supra,* we held that occupying claimants were entitled to receive credit for all moneys which, according to the custom of the country, they had paid for the management of the property and the collection of rents. These credits were allowed as necessary expenses, and were deducted from the gross rents. But, before such credits can be allowed, it must be shown that such expenses were actually incurred by being actually paid out by the occupant. Unless such expenses were paid, no credit should be given therefor.

The defendants in this case paid out no sum for the collection of rents, and are therefore entitled to no credit therefor.

3. The master charged the occupying claimants with interest on the rents, calculating same from the first of each month up to the date of his report. The chancellor found as a matter of law that the interest on these rents should be calculated from the end of each year. In this holding we think the chancellor was correct. The owner is entitled to recover from the occupying claimant the fair rental value of the lands during the period named in the Betterment Act. The amount of such recovery is not determined by the rents actually received by the occupant, but by the rental value thereof; and the interest which he is entitled to recover should be based upon that value. The Betterment Act provides that the rents recoverable shall accrue within three years next before the commencement of the suit. By this statute, we think the rents are fixed upon a basis of annual periods, and the interest recoverable thereon should therefore be calculated according

to such annual periods, beginning at the end of each annual period.

4. The chancellor found as a matter of law that the defendants were entitled to interest on the improvements from the date of their respective purchases. This, we think, was error. The value of the improvements which the occupying claimant is entitled to recover by virtue of the Betterment Act is determined at the time of the recovery. The allowance is made upon the ground that the improvements pass into the hands of the true owner as a new acquisition; and they can only be a new acquisition to the owner to the extent of their actual value at the time of such recovery. While the cost of making such improvements may be taken into consideration in arriving at their value, yet such cost is not necessarily controlling. The cost of the improvements in the condition in which they are at the time of the recovery may well afford a means of arriving at the value of such improvements. This, we understand, was in effect the finding of the master as to the value of the improvements on these respective lots. The finding so made by him was the value of these improvements at the time of the recovery; and therefore interest should not have been added thereto. *McDonald v. Rankin, supra.*

5. The chancellor allowed as a credit to the defendants all taxes paid on the lands by them since their respective purchases of the lots, and also the taxes paid thereon by Mary Hare and her administrator from the date of the death of John Hare up to the date of the purchases of said lots by the defendants, together with interest thereon from such latter date.

It is earnestly insisted by counsel for plaintiff that the defendants were not entitled to recover the taxes paid by Mrs. Hare and her administrator. This contention is made upon the ground that, according to the undisputed evidence, Mrs. Hare and her administrator received the rents of these lots during such time, and had in their hands property of John Hare far in excess of the amount of said taxes. This question, however, we think; is definitely determined by the provisions of our statute, which prescribes that the occupying claimant shall recover "the amount of all taxes which may have been paid on such lands by such person and those under whom he claims." Kirby's Digest, § 2754.

The Betterment Act, of which this section is a part, was enacted to adjust the equities between the owner and the occupying claimant. The rights of the owner and the claimant are definitely fixed by this statute. It determines what each shall be entitled to recover. *Brown* v. *Nelms*, 86 Ark. 368; *McDonald* v. *Rankin, supra.*

To the occupying claimant the statute provides that there shall be allowed all the taxes paid by him and by those under whom he claims. This allowance is made without regard to whether or not the lands have or have not an actual rental value. The owner of the land by the betterment act is limited in his recovery of rents to a period of three years next before the institution of the suit. He is deprived of all rents that accrued prior to that date, and can not recover such rents, either directly or indirectly, by way of offset against the taxes. It appears from the agreed evidence that Mrs. Hare and her administrator had sufficient funds of their own with which to pay these taxes, and the presumption is that when they paid them they did so out of funds which they themselves owned, rather than out of property that was owned by another.

It is urged that the defendants are not such claimants under Mrs. Hare as are described in the Betterment Act, because they purchased the lots at a judicial sale which was made by the court, and not by Mrs. Hare or her administrator. But, while it has been held that for certain purposes the court in a judicial sale is the vendor, yet this is only in the sense that the court has complete supervision over the sale, and that any officer or commissioner appointed by it to make the sale is only its representative. As a matter of fact, the entire interest and title of the party owning the land is actually sold by a judicial sale. The court is only the means by which the title of the true owner is passed to the purchaser. By such judicial sale, the court simply passes every interest in the land which the owner possessed, and thereby the purchaser at such judicial sale becomes entitled to all the interest which the original owner had. The purchaser deraigns his title to the land through such owner, and therefore actually claims the land under such owner. He does not trace his title to the court, but to the original owner, whom the court simply represents for the purpose of passing the title. We are of the opinion, therefore, that the

defendants were entitled to credit for all taxes paid on the respective lots by them, and also by Mrs. Hare and her administrator since the death of John Hare; and, as was held in the case of *McDonald* v. *Rankin, supra,* they are also entitled to recover interest upon all such taxes so paid, from the date that they were paid by Mrs. Hare and her administrator, as well as by the defendants.

It follows from the above that the decree of the chancellor must be reversed; but the only findings and conclusions of the chancellor which we hold to be erroneous are specifically set out above. All other findings and conclusions made by him are approved and affirmed. This cause will be remanded to the chancery court with directions to enter a decree in accordance with this opinion.

HART, J., (dissenting). The agreement for a reference in this case is as follows:

"It was further stipulated and agreed by the respective parties in open court that if the court should find against the said defendants and cross-plaintiffs on the issues made by their answers and cross-complaints, that the said respective causes should then be referred to a master to take testimony as to the mesne profits due plaintiff, if any, from said defendants, respectively, and as to the amounts due defendants, respectively, for improvements made and taxes paid, if any, by them, or either or any of them upon the property in controversy in said several cases."

To my mind an agreement to take testimony before a master does not include a consent that he may make a finding of facts; and it is well settled in this State that in order to make the finding of facts by a master as conclusive as the verdict of a jury, there must be a reference by consent to find the facts. The reason for the rule is that, the parties having voluntarily submitted their controversy to a special tribunal, there is no reason why they should not abide the result of their action.