CROWELL *v.* SEELBINDER.

Opinion delivered May 9, 1932.

*Edgar Lee Matlock,* for appellant.
*R. S. Wilson,* for appellee.

Smith, J. Appellants brought this suit in ejectment to recover from appellees the possession of a lot in the town of Van Buren. Mrs. Emma B. Crowell, who was the mother of appellants, took an estate for life in the lot under the will of her father, with remainder over to her children. After the life estate had vested in Mrs. Crowell, she attempted to convey the fee title to B. J. Brown, and, by mesne conveyances, the title passed to the father of appellees, from whom they inherited the lot.

It is conceded that Mrs. Crowell owned only a life estate, and that appellees acquired such title as she owned. The cause was transferred to equity for an accounting, where the chancellor found that Mrs. Crowell's successors in title had acquired her title in good faith, and that, believing themselves to be the true owners thereof, they had improved the property. Without discussing the testimony, we announce our concurrence in the finding of the court below that appellees and their predecessors in title had color of title to the lot, and, believing themselves to be the owners thereof, had peaceably improved it, thereby enhancing its value, and they are therefore entitled to recover this enhanced value, pursuant to the provisions of § 3703, Crawford & Moses' Digest.

As has been said, the cause was transferred to equity for an accounting as to the value of the rents, on the one hand, and as to the amount of taxes and insurance paid and as to the enhanced value, on the other, and, without making special findings on any of these questions, the court found that appellants were entitled to judgment for the possession of the land, but rendered judgment against them for $959.27, and ordered that no writ should issue for the possession of the lot until this sum had been paid pursuant to § 3704, Crawford & Moses' Digest, and this appeal is from that decree.

The excellent briefs of opposing counsel review many of the cases which have dealt with the legal questions here involved, and which have definitely settled those

questions, except only those relating to proper credits to be allowed for improvement taxes paid.

As we understand the decree, the court allowed appellees credit, not only for the enhanced value of the property, but also for the cost of certain repairs made for the convenience of a tenant who occupied the building which a predecessor of appellees in the title had built, and also allowed credit for certain insurance premiums paid by appellees, and also refused to charge appellees for certain rents for the reason that they had failed to collect them.

In the case of *McDonald* v. *Kenney*, 101 Ark. 9, 140 S. W. 999, the court said that the "Betterment Act" (act 69, Acts 1883, page 106), appearing as § 3703, *et seq.*, Crawford & Moses' Digest, had established an arbitrary standard to adjust the equities between persons who, having color of title to real estate, had in good faith improved it, and had later been evicted because of the failure of their title. That the true owner was allowed to recover rents for the limited period of three years only preceding the recovery of the lands, but that the statute "also arbitrarily allowed all rents issuing from the property during that period, both from the land and the improvements thereon during those three years," and that "the rents are fixed upon a basis of annual periods, and the interest recoverable thereon should therefore be calculated according to such annual periods, beginning at the end of each annual period."

The same case also held that, while the cost of making the improvements may be taken into consideration in arriving at their value, yet the cost is not necessarily controlling. The thing to be ascertained is value, and not cost. This subject was exhaustively considered in the opinion in the case of *McDonald* v. *Rankin*, 92 Ark. 173, 122 S. W. 88, and need not be here enlarged upon.

In that case it was said that the allowance for improvements was made upon the ground that they passed into the hands of ·the person recovering them as a new acquisition, and are only a new acquisition by him to the

extent of their value at the time he recovers or obtains possession of them, and their value at that time is to be allowed, and nothing more. *Summers* v. *Howard,* 33 Ark. 490; *Greer* v. *Fontaine,* 71 Ark. 605, 77 S. W. 56. It was there also said that "the value thereof is based upon the enhanced value which these improvements at the time of the recovery impart to the land."

The cost of the repairs should not therefore have been allowed as a separate item, but should have been considered in conjunction with other testimony tending to show the extent to which the cost of these repairs had enhanced the value of the land.

In the case of *McDonald* v. *Kenney,* 101 Ark. 9, 140 S. W. 999, it was said that, "If the vacant lots had a rental value, the defendants are chargeable therewith also, because they were withholding same from the true owner." We therefore hold that appellees' failure to collect portions of the rent from their tenants in possession does not relieve them from liability therefor. They are liable for such rental value as the property possessed, whether rents were collected or not, for the reason stated in the McDonald case, *supra,* to-wit: "because they were withholding the same from the true owner."

The case of *McDonald* v. *Rankin, supra,* is decisive of appellees' claim for insurance paid. It was there held (to quote a headnote) that: "Where the purchaser of the land at a judicial sale which was subsequently held void insured improvements thereon and collected the insurance money after the property was destroyed by fire, she will not be held to account therefor to the owner of the land, as the insurance contract was a personal one." In the instant case no fire occurred, and the insured buildings stand undamaged by fire, but that fact does not affect the legal principles which control. The insurance contract for which appellees paid was a personal contract for their own benefit, and they therefore have no right to charge the premiums paid to appellants. See also *Roesch* v. *Johnson,* 69 Ark. 30, 62 S. W. 416; *Langford* v. *Searcy College,* 73 Ark. 211, 83 S. W. 944.

The most difficult question presented on this appeal is that of the allowance to be made appellees on account of improvement district taxes paid. The property is in several different improvement districts, in all of which the betterment assessments were distributed over a period of years payable in annual installments.

In the case of *Hicks* v. *Norsworthy,* 176 Ark. 786, 4 S. W. (2d) 897, we said that ''the assessments for permanent improvements must be ratably and equitably apportioned between the life tenant and the remainderman,'' and that holding was reaffirmed in the case of *Kory* v. *Less,* 180 Ark. 342, 22 S. W. (2d) 25, where we said that ''no rule could be laid down that would of itself determine the proportion or percentage that each party should pay in all cases.'' We there cited 21 C. J. 958, and 17 R. C. L. 639, where rules of apportionment were announced which had been arrived at in the construction of statutes peculiar to the jurisdictions in which the cases had originated, but none of which, so far as we were advised, are identical with our own statute. In some of these jurisdictions the special taxes are not based upon enhanced value, while we have uniformly held that our special taxes have no other basis. The thing assessed with us is not the value of the property, but the estimated enhancement in value which will result from the construction of the proposed improvement. While these improvements, theoretically at least, are permanent in character, they usually require maintenance and replacement. The theory of our law is that the improvement, by enhancing the value of the use of the property, will enhance its market value, and it is this enhanced value which we tax in our improvement districts. For instance, a drainage canal makes land more arable and tillable; a sidewalk or a street makes property more accessible; sewerage and water make property more sanitary, and the value of the property which has acquired these facilities is enhanced, and the life tenant, during his possession, enjoys these benefits, and what could be more just and equitable than that he should pay for these benefits

ratably while he is enjoying them. It is a matter of common knowledge that these improvements are paid for with the proceeds of bonds. Our reports are full of such cases, and these bonds are usually payable over a period of twenty years, and but few of them bear interest at a rate less than five per cent. It does not appear equitable to allow the life tenant to enjoy the benefit of the improvement and pay interest only on the annual installments of benefits, thereby imposing upon the remainderman the burden of paying the principal debt, when the improvement, lacking maintenance, might, and in many cases would, be destroyed by age and use.

We are therefore of the opinion that, when the payments for the improvement are distributed over a considerable number of years, as we understand the facts to be in the instant case, a ratable and equitable distribution of this burden requires the life tenant to discharge the annual assessments during each year of his occupancy. A case might arise where, under facts peculiar to it, this would not be equitable, but, in the absence of special equities, we announce this as the rule to be generally applied. This rule appears to us to be equitable in ordinary cases, and possesses the quality of simplicity. There should be a general rule for the determination of such questions, and we think the rule announced will work justice in ordinary cases.

The recognition of the necessity for a general rule to determine the relative rights of the true owner of land and those of an occupant who, believing himself to be the owner thereof and having color of title thereto, has improved it, and thereafter been evicted, led to the enactment of the Betterment Statute under which this case arose. This statute has been referred to in cases construing it as arbitrary, yet it has been consistently upheld and enforced as a fair means of determining conflicting interests of parties litigant, under the conditions stated to which the statute applies, depriving no one of any constitutional rights.

The decree of the court below will therefore be reversed, and the cause will be remanded, with directions to state the account between the parties in accordance with the views herein expressed.

HART, C. J., dissents in part; KIRBY, J., dissents.