RIDDLE *v.* WILLIAMS.

4-6865                                                     66 S. W. 2d 893

Opinion delivered November 16, 1942.

*J. Brinkerhoff,* for appellant.

*Lamb & Barrett,* for appellee.

GREENHAW, J.   Appellee brought this suit in ejectment against appellant in the Poinsett circuit court to recover possession of lot 1, block 1 of Little River Addition to the town of Marked Tree.  Appellant answered, setting up a number of defenses, and upon his motion the cause was transferred to the chancery court.  The chancellor held that appellee's title was paramount, declined to allow appellant any sum for improvements or taxes, and ordered a writ of possession, from which decree appellant has appealed to this court.

The evidence showed that Maggie Williams, appellee's mother, owned the property in question and in March, 1928, executed a deed of trust to Charles M. Bryan, trustee for Wilson-Ward Company, covering this lot, together with 12 other lots in Marked Tree.  The indebtedness was due November 15, 1928, and since no credits appear upon the mortgage record the lien became barred as to third parties after more than five years from the due date.

The lot in question was included in three improvement districts.  Assessments for 1927 and 1928 due the St. Francis Levee District were not paid, nor was the assessment for 1930 due Drainage District No. 7.  These districts foreclosed, and the property was sold by the commissioner pursuant to the decree and purchased by the respective districts.  On January 9, 1934, appellant purchased this lot and obtained a deed thereto from the St. Francis Levee District, and on January 12, 1934, he purchased the lot and obtained a deed thereto from Drainage District No. 7.

In September, 1934, suit was filed to foreclose the deed of trust executed by Maggie Williams in favor of Wilson-Ward Company, and a decree thereon was taken in August, 1935.  For some reason which was unexplained the property was not immediately sold, but was finally sold by the commissioner in July, 1939, almost four years after the decree had been entered, and the lot in question,

along with all other property included in the mortgage, was purchased by J. H. Crain, trustee for Wilson-Ward Company, and a deed was executed to Crain by the commissioner on September 6, 1939.

Appellant was not made a party to the foreclosure of the deed of trust, nor was a *lis pendens* filed. It is conceded that Crain acquired no title to lot 1 by reason of the foreclosure under the deed of trust, the lien having been cut off by foreclosure and sale to the improvement districts for the 1927 and 1928 levee district assessments and the 1930 drainage district assessment.

After appellant had acquired the lot in question from the levee and drainage districts in January, 1934, he attempted to exercise the right of ownership thereof, but was interfered with by appellee's mother, who apparently was still claiming an interest in the lot. In February, 1936, appellant effected a settlement with appellee's mother by which he conveyed to her two lots and she gave him a quitclaim deed to the lot in question. Appellant had conferred with an attorney, who advised him that by obtaining a quitclaim deed from Maggie Williams he would have no further worries as to the validity of his title.

Appellant paid all assessments due on this lot to all improvement districts, and also state and county taxes, for the years 1935, 1936, 1937, 1938, 1939 and 1940, and also levee and drainage district assessment for 1941. It appears, however, that the drainage district assessment for 1934 and the Ozark Trail Road Improvement District assessment for 1932 were not paid by appellant or anyone else, and these districts foreclosed their liens upon the lot for these assessments, the property was sold to the districts and the commissioner executed his deeds to the respective districts on December 7, 1936.

October 7, 1939, almost three years after Drainage District No. 7 and Ozark Trail Road Improvement District obtained title, the districts executed their respective deeds conveying the lot in question to J. H. Crain, trustee, who on December 7, 1939, conveyed all the property obtained at the foreclosure sale to appellee.

Appellant testified that he did not know that these assessments had not been paid; that he intended to pay all assessments due at the time he purchased the lot from the levee and drainage districts in January, 1934, and would have paid the drainage and road improvement assessments upon which decrees of foreclosure were entered had he known they had not been paid.

T. C. Brigance was secretary of Drainage District No. 7 and Ozark Trail Road Improvement District. At the time appellant purchased from the drainage district he executed and delivered to Brigance his check for $19.80. Brigance on his own motion changed the check, reducing it to $8.80, or $11 less than the amount for which it was originally executed. Appellant testified that he thought he was paying all assessments due on this lot, although nothing was said about the Ozark Trail Road Improvement District assessments. Brigance testified that the original amount of the check would have more than paid the 1934 drainage assessment and the assessments due Ozark Trail Road Improvement District. However, the tax books were not open for payment of the 1934 drainage assessments until in February, 1934, and the 1934 drainage assessments were payable to the county tax collector.

Some time prior to Christmas, 1936, appellant decided to erect a building on this lot, and his attorney advised him that the title was good and he had nothing to worry about. Accordingly, about Christmas, 1936, he began the erection of a substantial brick building with concrete floor upon the lot in question, and this improvement was completed about May, 1937, at a cost of nearly $6,000. It was also shown that the cost of the improvements and the taxes paid by appellant amounted to $6,136.

Appellant interposed a number of defenses to this suit, all of which have had our serious consideration. Under the evidence in this case we are unable to say that the finding and decree of the chancery court that appellee's title was paramount was against a preponderance of the evidence. This lot having been conveyed to

the drainage and road improvement districts by deeds of the commissioner in the foreclosure proceedings on December 7, 1936, the time of redemption had expired prior to the conveyance by these improvement districts to Crain, trustee, on October 7, 1939.

Appellant finally urges that in the event this court should hold that the title of appellee is paramount, appellant is entitled to the enhanced value of the property under the betterment act, and to the taxes paid by him. The betterment act, § 4658 of Pope's Digest, provides: "If any person, believing himself to be the owner, either in law or equity, under color of title, has peaceably improved, or shall peaceably improve, any land which upon judicial investigation shall be decided to belong to another, the value of the improvements made as aforesaid and the amount of all taxes which may have been paid on said land by such person, and those under whom he claims, shall be paid by the successful party to such occupant, or the person under whom or from whom he entered and holds, before the court rendering judgment in such proceedings shall cause possession to be delivered to such successful party."

The undisputed evidence in this case shows that at the time appellant constructed the improvement he believed himself to be the owner of the lot, and was in peaceable possession thereof under color of title. Not only had he obtained deeds from the levee and drainage districts in January, 1934, but he made a settlement with appellee's mother whereby she conveyed to him, in February, 1936, all of her right, title and interest in the lot in question. It will be observed that appellant lost the title to this property by reason of the foreclosure of the 1934 drainage assessment and the 1932 Ozark Trail Road Improvement District assessment, and the sale thereunder to these respective districts, to which deeds were executed by the commissioner on December 7, 1936.

However, the evidence is undisputed that appellant did not know of these foreclosure sales to the improvement districts and thereafter, and while he was still in peaceable possession of this lot, believing himself to be

the owner thereof, he made valuable improvements thereon at considerable expense. He testified, and it was undisputed, that in doing so he acted in good faith, stating: "In good faith I believed I owned the property, beyond a doubt, and would not have spent that much money if I had not."

It is also undisputed that an attorney advised him before the improvements were made that the deed from Maggie Williams cleared up the title. It is further undisputed that after purchasing this lot from the levee and drainage districts he paid all assessments due all improvement districts, as well as the state and county taxes due thereon for all subsequent years, except the drainage assessment for the year 1934 and the road improvement district assessment for 1932, and that he would have paid these had he known they had not been paid.

In the case of *Beard* v. *Dansby*, 48 Ark. 183, 2 S. W. 701, this court, among other things, said in considering the betterment act: "But the constructive notice of an adverse title, which the law implies from the registry of a deed, is not sufficient to preclude the occupant from recovering for improvements, if he, in fact, purchased in good faith and under the supposition that he was obtaining a good title in fee. Actual notice is the test—that is, either knowledge of an outstanding paramount title or of some circumstance from which the court or jury may fairly infer that he had cause to suspect the invalidity of his own title. Now, the mere fact that the defect in the title would have been disclosed upon an examination of the public records does not bring such knowledge home to him; for it is not inconsistent with his ignorance of the existence of such a deed, nor with an honest belief that his title is uncontested. . . . The only requirements of the act are, that the occupant should have had peaceable possession, at the time the improvements were made, under color of title and under the belief that he was the owner of the land. Any instrument having a grantor and grantee, and containing a description of the lands intended to be conveyed, and apt words for their conveyance, gives color of title. . . . Good faith, in its

moral sense, as contradistinguished from bad faith, and not in the technical sense in which it is applied to conveyances of title, as when we speak of a *bona fide* purchaser, meaning thereby a purchaser without notice, actual or constructive, is implied in the requirement that he must believe himself the true proprietor. It must be an honest belief, and an ignorance that any other person claims a better right to the land. . . . The betterment act does not proceed upon the idea of contract, or consent of the parties, or negligence of the owner in asserting his title. It is a rule for administering justice; and the principle of it is, that no one ought to be enriched at the expense of another.''

The Beard case was reaffirmed in the case of *Shepherd* v. *Jernigan*, 51 Ark. 275, 10 S. W. 765, 14 Am. St. Rep. 50, where this court said: ''If, however, the defendant has improved the land in good faith under the belief that he was the sole owner, he is entitled to pay for his improvements by the terms of the betterment act. Constructive notice of title, such as is implied from the registry of a deed, is not in itself sufficient to preclude an occupant from its benefits.'' See, also, *Bloom* v. *Strauss,* 70 Ark. 483, 69 S. W. 548; *McDonald* v. *Rankin,* 92 Ark. 173, 122 S. W. 88; *Green* v. *Maddox,* 97 Ark. 397, 134 S. W. 931; *Crowell* v. *Seelbinder,* 185 Ark. 769, 49 S. W. 2d 389, 83 A. L. R. 788.

In the case of *Wilkins* v. *Maggard,* 190 Ark. 532, 79 S. W. 2d 1003, the first headnote reads as follows: ''Under the betterment act of March 8, 1933 (Crawford & Moses' Dig., § 3703), one who, believing himself to be the owner and under color of title, has peaceably improved land which upon judicial investigation has been determined to belong to another, is entitled to recover the value of his improvements and the taxes paid.''

This property was conveyed by the commissioner to the improvement districts on December 7, 1936, prior to the time appellant placed his improvements upon the lot. Appellant acted in good faith in erecting these improvements, when he was in peaceable possession under color of title, believing himself to be the owner of the

1054

property. We think these facts clearly bring him within the purview of the betterment act, and that he is entitled to its benefits.

Having reached the conclusion that the chancery court erred in so much of its decree as denied to appellant the benefits of the betterment act, the decree is to this extent reversed, and the cause is remanded with directions to allow appellant the benefits provided therein.

GRIFFIN SMITH, C. J., (dissenting).

Evidence preponderates on the proposition that when appellant tendered his check to Brigance and it was reduced from $19.80 to $8.80, he knew 1934 assessments were not being paid. They were not then collectible by Brigance. For this reason, and others, appellant did not act with the good faith contemplated by the betterment statute. I therefore dissent.