
# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV–15–470

|  |  |
|---|---|
| | **Opinion Delivered:** November 16, 2016 |
| MIDFIRST BANK, CAROLYN BEDFORD, AND DENISE BEDFORD | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. 18CV-08-10] |
| APPELLANTS | |
| V. | HONORABLE VICTOR L. HILL, JUDGE |
| LORI LEDBETTER SUMPTER | |
| APPELLEE | AFFIRMED AS MODIFIED IN PART, AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

## DAVID M. GLOVER, Judge

This case[1] involves separate appeals by appellant MidFirst Bank (MidFirst) and appellants Carolyn Bedford and her sister, Denise Bedford, from the order of the Crittenden County Circuit Court unwinding the results of a foreclosure decree that was set aside for improper service on Carolyn Bedford, the property owner. MidFirst appeals that part of the order awarding appellee Lori Sumpter a money judgment against it and from the award of indemnification to Carolyn Bedford on a separate claim. Carolyn and Denise Bedford appeal from that part of the order directing that they take nothing on their conversion claims against

[1]In *MidFirst Bank v. Sumpter*, 2014 Ark. App. 544 (*Sumpter I*), we dismissed an earlier appeal of this case for lack of a final order.

MidFirst and Sumpter. Carolyn Bedford also argues that the circuit court erred in failing to remove a cloud on her title. Sumpter has filed a cross-appeal. We affirm as modified in part, affirm in part, reverse in part, and remand in part on the direct appeals. We affirm on Sumpter's cross-appeal.

*Background and Procedural History*

In July 1986, Carolyn Bedford became the owner of property located in West Memphis, Arkansas. Bedford assumed the indebtedness owed under a deed of trust and note executed by Warren Taylor and his wife, Lisa Taylor. This note and deed of trust were later assigned to MidFirst. The note went into default when Carolyn Bedford failed to make the March 2007 payment.

On January 10, 2008, MidFirst filed a judicial-foreclosure action against Carolyn Bedford and other defendants with record title interests in the property. Service on Bedford was had by certified mail, restricted delivery, return receipt requested; but the green card was signed by Bedford's sister, Denise Bedford, who was residing in the home.

After Carolyn Bedford failed to respond to the complaint, the circuit court entered a decree of foreclosure by default on July 25, 2008. The property was offered for public sale on September 15, 2008, and Sumpter purchased the property for $35,103.46. On October 6, 2008, the circuit court confirmed the sale and approved the Commissioner's Deed. The Commissioner's Deed to Sumpter was recorded the same day.

On October 2, 2008, Sumpter borrowed $62,250 from Fidelity National Bank, secured by a mortgage on the property, to finance the purchase and to make improvements to the property ($35,103.46 was immediately drawn by Sumpter for payment of the

purchase price, and the remaining balance of the loan was drawn by Sumpter for improvements and other expenses). The mortgage was recorded shortly after the Commissioner's Deed had been recorded. After evicting the Bedfords from the property, Sumpter began making improvements. In November 2008, Sumpter leased the property.

On October 15, 2008, Carolyn Bedford moved to set aside the foreclosure decree for insufficient service of process. She alleged the service of the summons and complaint by certified mail was improper because it was signed for by Denise Bedford instead of Carolyn Bedford. Sumpter was made a party.

In August 2009, the circuit court found service of the foreclosure complaint had been defective. The court set aside the default judgment, vacated the foreclosure sale, voided the Commissioner's Deed, and ordered possession be returned to Bedford within sixty days. The court noted that MidFirst had failed in its obligation to ensure Sumpter received good title to the property. Sumpter sought to have the order modified so Bedford would not regain possession until she paid the value of the improvements made by Sumpter, as provided by the Betterment Act.[2]

Sumpter sought to quiet title to the property in her name and requested damages from Bedford and MidFirst alleging various legal theories. Carolyn Bedford answered the petition and denied the material allegations. MidFirst responded by asserting that the doctrine of caveat emptor applied to bar any relief to Sumpter. Sumpter later amended her

---

[2]Ark. Code Ann. § 18-60-213 (Repl. 2003).

petition to seek damages under the Betterment Act in the approximate sum of $60,000, together with lost revenues in the amount of $352,000.

Carolyn Bedford filed a cross-claim for indemnification against MidFirst for any damages Sumpter might recover against her.[3] As an alternative theory in an amended cross-claim, Bedford asked for damages for wrongful foreclosure. She also asked that Fidelity National's mortgage lien on the property be canceled. Denise Bedford filed her motion to intervene for the purpose of asserting a conversion claim against MidFirst and Sumpter. After the circuit court granted the motion to intervene, Denise Bedford filed her third-party complaint seeking damages from MidFirst and Sumpter for conversion of personal property lost or damaged during the eviction.

By agreed order entered on December 28, 2009, Sumpter's purchase price of $35,103.46 was refunded to her by MidFirst. The order reserved the question of whether she should be awarded interest on the sum.

Carolyn Bedford filed for Chapter 13 bankruptcy protection on April 15, 2010. Fidelity National and Sumpter were granted relief from the automatic stay in the summer

---

[3]Sumpter also set forth third-party claims against Fidelity National Bank, Stewart Title, and the current lessees of the property. She further requested the court enter a judgment declaring that she was not liable to Fidelity National with respect to the loan for the property or to the lessees under the lease. Sumpter later amended her petition again to include MidFirst, Bedford, Fidelity National, Stewart Title, and the current lessees in her claims.

MidFirst also amended its original foreclosure complaint to add the additional parties that may claim an interest in the property. Fidelity National, Bedford, and Sumpter each responded to MidFirst's amended complaint and denied the material allegations. MidFirst asserted that Bedford failed to make the March 2007 payment and that the total principal due was $25,679.46, together with accrued interest of $8,003.60, plus insurance charges, taxes, late fees, and attorney's fees.

SLIP OPINION

of 2011. The bankruptcy court confirmed Bedford's Chapter 13 plan to become current on the mortgage in August 2011.

Sumpter moved for partial summary judgment on the issue of MidFirst's liability. MidFirst responded to the motion. Following a hearing, by order entered on July 27, 2011, the circuit court granted Sumpter's motion as to MidFirst's liability only, reserving all other issues, including damages and apportionment among the parties. The court did not state the theory or the basis for its ruling but noted both Bedford and MidFirst were inattentive to their business, which led to the improper foreclosure action, and Sumpter was not to blame.

The case proceeded to a two-day bench trial. In its order entered on November 2, 2012, the circuit court found Sumpter was entitled to recover from MidFirst the total amount she had borrowed from Fidelity Bank, plus all associated costs and interest paid and accrued, which the court found to be $81,516.15, less the refunded purchase price of $35,103.46, for a balance of $46,412.69, plus interest at the maximum lawful rate until paid. The court specifically declined to give an offset for the $7,000 in rent Sumpter had received on the property. Fidelity National was granted a lien on the net proceeds of the judgment, or such portion thereof as might be necessary, to pay off the balance Sumpter had borrowed. Finally, the circuit court found the Bedfords could not recover on their conversion claims because their claims were grossly exaggerated and not credible, their damages not proven, and any amounts claimed by Carolyn Bedford were more than offset by the improvements Sumpter had made to the property.[4] That judgment was appealed.

---

[4]The remaining parties, Stewart Title, Warren Taylor, Lisa Taylor, Charles Hutchinson d/b/a A-1 Bail Bonds, Erica Smith, Benjamin Webb, and Natasha Webb, were dismissed from the case.

We dismissed the original appeals by MidFirst and the Bedfords in *Sumpter I, supra*, for lack of a final order because the circuit court did not address Sumpter's Betterment Act claim against Carolyn Bedford or Bedford's related cross-claim for indemnity on that claim against MidFirst.

On remand, the court entered an order on January 7, 2015, granting Sumpter judgment against Carolyn Bedford in the amount of $9,650 under the Betterment Act, finding that the Bedford property had increased in value by $9,650 due to the improvements by Sumpter. The court declined to offset this Betterment Act judgment by the $7,000 in rent received by Sumpter during the period in which she was in possession of the property. The court granted Carolyn Bedford's cross-claim for indemnification against MidFirst in the same amount.

MidFirst timely filed a posttrial motion noting that it had already repaired the purchase price of $35,103.46 to Sumpter and arguing that the doctrine of caveat emptor applied to the foreclosure sale and that Sumpter was barred from any other recovery from MidFirst. MidFirst alternatively argued the Betterment Act was Sumpter's exclusive remedy or, at least, limited the amount of her recovery to the value of the improvements and that any Betterment Act judgment should be against the property owner, Carolyn Bedford, not MidFirst. Finally, MidFirst argued that Carolyn Bedford was not entitled to judgment for indemnification for Sumpter's judgment under the Betterment Act.

The court entered a final order on May 29, 2015, addressing all parties' posttrial motions and denying all other claims for relief from the parties. The order also incorporated by reference the original November 2, 2012 order and the January 7, 2015 order addressing



the Betterment Act. Timely notices of appeal and cross-appeal were filed by MidFirst and the Bedfords. Sumpter filed a notice of cross-appeal in the event the award of damages against MidFirst is reversed.

*Standard of Review*

In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence. *Tadlock v. Moncus*, 2013 Ark. App. 363, 428 S.W.3d 526. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been committed. *Id.*

*Discussion*

*Sumpter's claims against MidFirst and Carolyn Bedford*

The order confirming the foreclosure sale was filed on October 6, 2008. Sumpter borrowed $35,103.46 from Fidelity National Bank to finance the purchase price.[5] The foreclosure sale was subsequently set aside, and MidFirst refunded the $35,103.46 purchase price to Sumpter on December 31, 2009. Hence the refund of the purchase price is not an issue on appeal.[6]

Sumpter's claims against MidFirst are essentially for the cost and expenses of the improvements to the Bedford property, plus interest paid and accrued to her lender, Fidelity National Bank. Sumpter also has a claim for the increased value of improvements against

---

[5]The balance of the $62,500 loan was subsequently drawn to finance improvements to the property and other expenses.

[6]However, the interest paid by Sumpter to Fidelity National Bank on the $35,103.46 principal is discussed hereinafter.

Carolyn Bedford under the Betterment Act. As such, we find that both claims by Sumpter

emanate from the improvements to the Bedford property. The claim against MidFirst is for

the *actual cost* of improvements, while the claim against Carolyn Bedford is for the *increased*

*value* of her property. As conceded by Sumpter's counsel in oral argument, Sumpter cannot

receive both remedies because it would amount to a double recovery. Based on these

competing, yet similar, claims we find that the legislature specifically promulgated the

Betterment Act to provide relief under these circumstances.

The Betterment Act provides in pertinent part that

> (a) If any person, believing himself or herself to be the owner, either in law or equity, under color of title, has peaceably improved, or shall peaceably improve, any land which upon judicial investigation shall be decided to belong to another, the value of the improvement made as aforesaid and the amount of all taxes which may have been paid on the land by such person, and those under whom he or she claims, shall be paid by the successful party to such occupant, or the person under whom or from whom, he or she entered and holds, before the court rendering judgment in such proceedings shall cause possession to be delivered to such successful party.

Ark. Code Ann. § 18-60-213(a). Thus, a person may recover for improvements made to

another's land under the Betterment Act if she (1) believes herself to be the owner of the

property; and (2) holds under color of title. *Smith v. MRCC P'ship*, 302 Ark. 547, 792

S.W.2d 301 (1990); *Tolson v. Dunn*, 48 Ark. App. 219, 893 S.W.2d 354 (1995). The remedy

provided by the Betterment Act is against the true owner of the property. *Stephens v. Clark*,

121 Ark. 292, 181 S.W. 895 (1915).  The Betterment Act also applies without regard to

whether the true owner wanted the improvements or whether he could profitably use them.

*Wallis v. McGuire*, 234 Ark. 491, 352 S.W.2d 940 (1962); *Neal v. Jackson*, 2 Ark. App. 14,

616 S.W.2d 746 (1981). Our supreme court has held the statute applies to the purchaser at

a judicial sale that has been set aside on the ground of irregularity. *McDonald v. Kenney*, 101 Ark. 9, 140 S.W. 999 (1911); *McDonald v. Rankin*, 92 Ark. 173, 122 S.W. 88 (1909).

Here, Sumpter clearly made improvements to the Bedford property while she believed herself the true owner and while she held color of title from the foreclosure sale. The evidence introduced in the record indicates that the value of improvements to the Bedford property for work provided by Sumpter was $9,650.[7] Based on the application of the Betterment Act, the damages sustained by Sumpter are not the costs of the improvements, but rather the increased value of the improvements. Therefore, Sumpter's judgment against MidFirst is set aside, and Sumpter shall have a judgment against Carolyn Bedford in the amount of $9,650 as herein below modified.

The next question is whether the circuit court erred in failing to apply a setoff for the rents Sumpter received.[8] The Betterment Act specifically provides that "the court *may allow to the owner* of the lands, as a setoff against the value of the improvements and taxes, the value of all rents accruing after the date of the judgment in which it has been allowed." Ark. Code Ann. § 18-60-213(e) (emphasis added). Despite the permissive plain language of

---

[7] There was conflicting evidence about the increase in value of the property. As part of its loan process, Fidelity National had an appraisal conducted on September 29, 2008, prior to any improvements being made, that valued the property at approximately $83,000 when completely improved. The Bedfords' appraiser valued the property at $77,000 in March 2010. The county assessor valued the property at $73,350 in 2005, with an appraisal for $74,500 in 2009 and another appraisal for $74,850 in 2010. Applying the case law and the Betterment Act to these facts, we cannot say the circuit court's award of $9,650 is clearly erroneous.

[8] There are inconsistencies in the amount of the rental income received by Sumpter. MidFirst and Sumpter stipulated that the amount was a gross figure of $7,000. It appears the circuit court's order utilizing the figure of $8,000 was a scrivener's error.

the statute, our supreme court has construed the Betterment Act as not providing for recovery of the value of improvements unless the improvements exceed the rents and profits due the owner. *Crouch v. Crouch*, 244 Ark. 823, 431 S.W.2d 261 (1968). Here, Carolyn Bedford made a demand for rents and profits against Sumpter. As a result, we hold the circuit court erred in failing to reduce the judgment on the Betterment Act by the amount of rent received by Sumpter. Therefore, the judgment in favor of Sumpter against Carolyn Bedford in the amount of $9,650 is reduced to $2,650.

The next question is whether the circuit court erred in awarding a judgment for indemnification in favor of Carolyn Bedford for Betterment Act damages over against MidFirst. We hold that it was error. The purpose of the Betterment Act was to compensate the mistaken occupier of property for improvements to the land made in good faith, under the belief he was the sole owner. *Riddle v. Williams*, 204 Ark. 1047, 166 S.W.2d 893 (1942). "The betterments act does not proceed upon the idea of contract or consent of the parties, or negligence of the owner in asserting his title. It is a rule for administering justice, and the principle of it is that no one ought to be enriched at the expense of another." *Id.* at 1053, 166 S.W.2d at 895 (quoting *Beard v. Dansby*, 48 Ark. 183, 188, 2 S.W. 701, 702 (1886)). Here, without regard to negligence, contract, or consent, Carolyn Bedford has received an increase in value to her property in the amount of $9,650. The court erred in granting Bedford a judgment over against MidFirst for indemnification and said judgment is reversed.

The only issue remaining in this part of the discussion relates back to Sumpter's purchase of the Bedford property at the foreclosure sale and the refund by MidFirst. While MidFirst ultimately repaid Sumpter the purchase price of $35,103.46 on December 31,

 

2009, Sumpter prayed for the return of interest paid. We hold that Sumpter shall have judgment against MidFirst for interest at the rate of 6.5% per annum[9] on the principal amount of $35,103.46 from October 6, 2008, through December 31, 2009.

*Conversion*

Carolyn and Denise Bedford argue that the circuit court erred in denying them recovery on their conversion claims against MidFirst and Sumpter. We disagree.

Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *Carpenter v. Layne*, 2010 Ark. App. 364, 374 S.W.3d 871. In order to establish liability for the tort of conversion, a plaintiff must prove the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owner's rights. *C.A.R. Transp. Brokerage Co., Inc. v. Seay*, 369 Ark. 354, 255 S.W.3d 445 (2007). If the defendant exercises control over the goods in exclusion or defiance of the owner's rights, it is a conversion, whether it is for defendant's own use or another's use. *Id.*

At trial, Carolyn Bedford sought approximately $6,000 for personal property, and Denise Bedford sought approximately $70,000 for personal property. There was disputed evidence as to the amount and condition of the Bedfords' personal property when it was left in the storage unit. Denise Bedford presented a detailed list of the items she claimed were lost. The testimony of the deputy sheriff supervising the move corroborated some of the items on the list with photographs. However, the deputy did not see any flat-screen

---

[9]The promissory note between Sumpter and Fidelity National included an interest rate of 6.5% per annum.

televisions. The total of those items on the list was more than $97,000. Included were three flat-screen televisions, exercise equipment, kitchen appliances, computers, hundreds of CDs and DVDs, and other electronics. Sumpter presented testimony from some of the crew that moved the personal property from the house to the storage unit. They said the property was in good condition when left in the storage unit. However, they denied there were flat-screen televisions or exercise equipment. Denny Sumpter testified the kitchen appliances were removed and replaced. Where the pivotal issue is the credibility of interested parties whose testimony is in direct conflict, we defer to the circuit judge's determination. *Carpenter, supra*. This is because the fact-finder's choice between two permissible views of the evidence cannot be clearly erroneous. *Rymor Builders, Inc. v. Tanglewood Plumbing Co.*, 100 Ark. App. 141, 265 S.W.3d 151 (2007).

In addition, the Bedfords were using the wrong measure of damages to attempt to prove their claims. The measure of damages for the conversion of personal property is the fair market value of the property at the time and place of the taking. *JAG Consulting v. Eubanks*, 77 Ark. App. 232, 72 S.W.3d 549 (2002). Fair market value is defined as the price the personalty would bring between a willing seller and a willing buyer in the open market after negotiations. *Id.* Evidence based upon purchase, replacement, or rental prices is improper. *Id.* Here, Denise Bedford testified solely as to the replacement cost of the items. She also testified the replacement values were from 2011, after the house had suffered from flooding in both 2010 and 2011. She made no effort to relate the value at the time of the taking. However, the plaintiff must show the fair market value *at the time of the taking*. *Id.* If the only testimony as to the value of the items taken is the replacement cost and there is no



evidence as to the fair market value, a judgment for the plaintiff cannot stand. *Bank of Cabot v. Ray*, 279 Ark. 92, 648 S.W.2d 800 (1983).

### *Removal of Cloud on Title*

Carolyn Bedford argues that the circuit court erred in not removing a cloud on her title in the form of the mortgage given in favor of Fidelity National Bank by Sumpter. While the circuit court stated that Fidelity National now had an unsecured obligation, out of caution we are concerned that this statement is insufficient to remove a cloud of title. We, therefore, remand to the circuit court to enter an order removing the lien in favor of Fidelity National on the Bedford property.

### *Cross-Appeal*

In her cross-appeal, Sumpter seeks remand for consideration of her various other causes of action and whether she should be subrogated to the rights of MidFirst. We hold that Sumpter does not have a cause of action against MidFirst for breach of contract, quasi–contract, implied contract, or breach of the covenants in the commissioner's deed because, in judicial sales, the court is the vendor. *Kellett v. Pocahontas Fed. Sav. & Loan Ass'n*, 25 Ark. App. 243, 756 S.W.2d 926 (1988). We agree with the statement of New York's highest court:

> With judicial sales, however, the situation is different. The contract is made with some officer or agent appointed by the court, who acts under its direction, judgment or decree. In such cases the purchaser cannot demand damages as for a breach of contract made by the court through its officer or agent, but has to rely upon the court to do equity under the circumstances. Therefore, the awarding of compensation to an innocent purchaser for his reasonable expenses in examining title, where it is found defective, is founded upon equity and not upon the breach of contract.

*People v. New York Building–Loan Banking Co.*, 82 N.E. 184, 185 (N.Y. 1907).

Likewise, Sumpter does not have a cause of action under the Arkansas Deceptive Trade Practices Act (ADTPA). The ADTPA, Arkansas Code Annotated sections 4-88-101 to −502 (Repl. 2011), prohibits deceptive and unconscionable trade practices. The circuit court, in addressing MidFirst's motion to dismiss Sumpter's claims, found the alleged misrepresentation would not support a claim for punitive damages because the "actions at issue herein were neither reckless nor were they intentional. What we have here is a mere oversight that resulted in a cascade of unfortunate consequences." Sumpter does not challenge the findings that MidFirst was neither reckless nor intentional. A private cause of action under the ADTPA does not arise absent a showing of both a violation and resultant damages. *Skalla v. Canepari*, 2013 Ark. 415, 430 S.W.3d 72. Here, Sumpter has not shown a violation of the Act.

*Conclusion*

In conclusion, we affirm and modify Sumpter's judgment against MidFirst for an amount equal to the interest at the rate of 6.5% per annum on the principal amount of $35,103.46 from October 6, 2008, through December 31, 2009. We remand to the circuit court for calculation of that interest. We also affirm and modify Sumpter's judgment under the Betterment Act against Carolyn Bedford to the amount of $2,650. We reverse Carolyn Bedford's indemnification judgment against MidFirst. We affirm the circuit court's judgment on the conversion claims of Carolyn and Denise Bedford. We affirm on Sumpter's cross-appeal because she does not have any other viable causes of action against MidFirst.

14

We remand to the circuit court and order the court to enter an order to remove the cloud on title evidenced by the lien in favor of Fidelity National Bank.

Affirmed as modified in part, affirmed in part, reversed in part, and remanded in part on direct appeal; affirmed on cross-appeal.

HIXSON and HOOFMAN, JJ., agree.

*Wilson & Associates, PLLC*, by: *H. Keith Morrison*, for appellant.

*Sheila F. Campbell, P.A.*, by: *Sheila F. Campbell*, for appellees.